1

2

3

4

5

6

7

8            **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   KIMBERLY R. OLSON,                          No.  2:19-CV-2127-KJM-DMC

12            Plaintiff,

13   v.                                          FINDINGS AND RECOMMENDATIONS

14   HORNBROOK COMMUNITY
     SERVICES DISTRICT, et al.,
15
              Defendants.
16

17

18            Plaintiff, who is proceeding pro se, brings this civil action.  Pending before the

19   Court is Defendant Kampa's motion to dismiss, ECF No. 10, which all other defendants join,

20   ECF No. 35.  The matter has been submitted on the record without oral argument.

21            In considering a motion to dismiss, the Court must accept all allegations of

22   material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

23   Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

24   v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

25   738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

26   ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen,

27   395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

28   factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

1  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

2  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

3           Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

4  of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

5  notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly,

6  550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order

7  to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain

8  more than "a formulaic recitation of the elements of a cause of action;" it must contain factual

9  allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56.  The

10  complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id.  at

11  570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

12  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

13  Iqbal, 129 S.Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but

14  it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting

15  Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a

16  defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement

17  to relief." Id. (quoting Twombly, 550 U.S. at 557).

18           In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials

19  outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

20  Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1)

21  documents whose contents are alleged in or attached to the complaint and whose authenticity no

22  party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

23  and upon which the complaint necessarily relies, but which are not attached to the complaint, see

24  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

25  of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

26  1994).

27  / / /

28  / / /

2

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## I.  PLAINTIFF'S ALLEGATIONS

This action proceeds on Plaintiff's original complaint. See ECF No. 1. Plaintiff names the following as defendants: (1) Hornbrook Community Services District (HCSD); (2) Clint Dingman; (3) Robert Puckett, Sr., an HCSD Director and President of the Board of Directors; (4) Michele Hanson, an HCSD Director and Secretary of the Board of Directors; (5) Melissa Tulledo, an HCSD Director; (6) Patricia Brown, an HCSD Director; (7) Peter Kampa, the General Manager of the HCSD; (8) Julie Bowles, Bookkeeper of the HCSD; and (9) Kevin Dixon, acting "under color of authority of [these] offices" and "purportedly" a consultant, employee, and/or agent of the HCSD and Board of Directors, Defendant Dingman's "purported" supervisor, and an independent contractor serving the role of HCSD Chief Systems Operator. See generally ECF No. 1. Plaintiff states that Defendants Hanson, Puckett, Brown, and Tulledo comprise the "Board Defendants." ECF No. 1, pg. 6.

### A.    General Allegations

Plaintiff asserts federal question jurisdiction directly under the First, Fourth, and Fourteenth Amendments to the United States Constitution.  See id. at 1.  Plaintiff also asserts federal question jurisdiction under Americans with Disabilities Act (ADA), Clean Water Act (CWA), Safe Drinking Water Act (SDWA), and 42 U.S.C. §§ 1983, 1988, and 12131-12134.  See id.  Plaintiff also asks the Court to exercise supplemental jurisdiction over related state law claims.  See id.

In the most general and vague of terms, Plaintiff alleges that the HCSD and Board Defendants took part in an "ongoing wrongful agreement and plan to manage the HCSD as a spoils system" and to retaliate against Plaintiff for her "political and legal activity in opposition to them." ECF No. 1, pgs. 2-3. As to the claim that Defendants operated the HCSD as a "spoils system," Plaintiff explains that "[t]here are no budgeted costs/expenditures for upgrades,

maintenance, or expansion," and that "[t]he Board Defendants, Bowles, and 'HCSD' routinely, and wrongfully/illegally, give some customers discounts, tax and fee waivers, reduced water charges, penalty waivers, rule exemptions, etc." ECF No. 1, pg. 3, n.4. Plaintiff claims that these Defendants "acted to systematically and wrongfully stifle, deny, suppress, and thwart" Plaintiff's right to vote and petition, as well as her entitlements to due process and equal protection. ECF No. 1, pg. 3. Plaintiff contends that these Defendants agreed and acted to deny her rights by "wrongfully ignoring certain statutory and Constitutional mandates, and the HCSD Bylaws' voter control provisions concerning: public business of the HCSD . . .; open and public meetings of the Board of Directors . . .; [and] compliance with the Brown Act's requirement that Board . . . meeting [agenda materials] be furnished prior to meeting upon request." Id.

Plaintiff further alleges, also in vague and general terms, that "documents concerning HCSD operations/functions [were provided] to favored customers via billing inserts, but not to Plaintiff; and, a general failure while operating the HCSD and acting as government officials to follow health and other water district-related laws resulting in health and safety nuisances and other torts." Id.

Plaintiff contends that the HCSD and Board Defendants deliberately interfered with Plaintiff's rights to speak at public HCSD meetings by "refusing and failing to provide notice of those meetings, and documents relating thereto to Plaintiff as requested, while knowing Plaintiff is disabled and unlikely to learn of meetings until after the fact." Id. at n.5. Plaintiff states that she was also prevented from petitioning the HCSD concerning HCSD matters and from voting, even though the HCSD Bylaws "mandate voter control over the waiving, imposing, or changing of rates, assessments, fees, penalties, charges, and certain policies of the HCSD." Id. at 3.

Plaintiff alleges the following against each Defendant, including John Does, individually, jointly, and severally:

> 10. . . . [E]ach of the Defendants… were the agents, partners, joint venturers, aiders, abettors, employers and employees, officers, directors, board members, ostensible agents, principals, co-conspirators and/or partners of one another as to any specific act, plan, agreement, coordinated action, conspiracy, or joint venture . . . and . . . each intended

4

the reasonably foreseeable outcome thereof, while acting in reckless disregard for any reasonably foreseeable harms that could have befallen Plaintiff.   . . . All Defendants acted pursuant to policies, customs, and practices of the HCSD adopted by the Board Defendants, its administrators or other directors, operators, employees, contractors, and/or agents."

      11.    Each of the Defendants caused and is responsible for the herein-described wrongful, unlawful, and/or tortious conduct resulting [in] injuries by: personally agreeing to and participating in the conduct or acting jointly, aiding, abetting, or conspiring with others who did so; by authorizing, ratifying, encouraging, agreeing with, acquiescing in, or setting in motion, policies, plans, or actions, that led to the wrongful conduct, or, actions [that] although lawful themselves, were in furtherance of other, unlawful, wrongful, and/or tortious conduct while knowing the ultimate goals of the agreements to do so were wrongful; . . . failing to take action to prevent the unlawful, wrongful, and/or tortious conduct described in the complaint; and . . . failing and refusing with deliberate indifference to Plaintiff's rights to conform their conduct to that dictated by the laws of the United States [and] the State of California, and/or the HCSD Bylaws.

      12.    In doing the acts alleged herein, the Board Defendants, Bowles, Kampa, Dixon, Dingman and, John Does 1 through 100, were acting in their official capacity as elected officials and/or public employees/officers, or as a direct agent[1] of an elected official or District officer, and/or 'jointly engaged' with a public officer or official while engaging in the alleged conduct, or were acting under color of such authority as HCSD employees, officers, or agents thereof.

Id. at 4-5.

Plaintiff further alleges that Defendants Kampa, Dingman, and Bowles, "while aware of the duties of the HCSD and Board Defendants, . . . have agreed with, conspired, aided, and abetted the HCSD and Board Defendants in violating provisions of the laws of the United States, and of the State of California, relating to the CWA, SDWA, the [California] Health and Safety Code, the [California] Water Code, the [California] Government Code, the Brown Act, the CPRA, the [California] Elections Code, the [California] Public Contracts Code, the [California] Uniform Construction Cost[] Accounting Act, Administrative Rules and Regulations relating to all of these laws, and the HCSD's own Bylaws, with the additional agreement and common goal to thwart any attempt by Plaintiff or the other electors of the District to exercise the rights of petition, assembly, protest, and to vote as afforded in the Bylaws at Sections A-9(1); A-9(11); A-

---

[1]    Plaintiff contends that ordinary customers or property owners within HCSD boundaries who "were participants in, and/or erstwhile beneficiaries of" "wrongfully" reduced or waived water bills under the authority of the Board Defendants, Defendant Dingman, or Defendant Bowles qualify as "direct agents" of elected officials or District officers and are thus state agents for the purposes of § 1983 liability. ECF No. 1, pg. 4 n.10; ECF No. 1, pg. 5 n.11.

9(13); A-9(26); 1-3.010; 1.5010(a)[;] 1-5.0209[; and] 1-5.030." ECF No. 1, pg. 11 (emphasis in original). Plaintiff does not specifically allege individual actions committed by Defendants Kampa, Dingman, and Bowles in violation of the cited statutes.

Also in very general terms, at paragraphs 51 and 52 of the complaint, Plaintiff alleges a conspiracy among the defendants.  See id. at 19.  According to Plaintiff:

> 51.    At all times material, the Board Defendants wrongfully, improperly, and/or illegally enlisted the aid of the other Defendants to intentionally promote, accomplish, assist with, legitimize, aid in, and ratify each of the wrongful acts and goals of the Board Defendants (and Kampa, Bowles, Dingman, John Does [footnote omitted], and Dixon) as set forth . . . throughout this Complaint. Each of these Defendants, with full knowledge of the wrongfulness, and/or unlawfulness of these goals, plans, acts, and methodologies, did in fact agree to, and thereafter acted to, aid, abet, assist in planning and execution, conspire with, and ratify the Board Defendants' wrongful conduct (as well as that of Defendants Kampa, Bowles, Dingman, and Dixon). . . .
> 52.    Plaintiff's allegations of conspiracy, aiding, abetting, ratifying, and/or directly participating in any portion of the conspiracies concerning State laws or common torts detailed in this complaint as to any Defendant also relies upon the general liability as to them by focusing on instances of "substantial assistance" between the Defendants concerning actions undertaken by each and all of them in regard to "wrongful conduct"; either their own, or that of another of the Defendants.  [citation omitted].

> Id. at 19.

**B.    Allegations Specific to Named Individual Defendants**

Plaintiff's complaint outlines her allegations as against each of the nine named defendants – Puckett, Hanson, Tulledo, Brown, Kampa, Bowles, Dingman, and Dixon.  See ECF No. 1, pgs. 7-18.  While Plaintiff outlines various allegations against HCSD as an entity, the Court does not summarize them here because HCSD can only act though its individual officers and directors, as to whom Plaintiff's allegations are discussed below.

1.    Puckett

Plaintiff incorporates by reference all her general allegations at paragraphs 1-16 and 23-27 of her complaint.  See id. at 7.  Plaintiff alleges, again very generally and without reference to specific facts concerning how, where, why, etc., that Defendant Puckett aided and abetted the other Board Defendants "in acting to wrongfully: hold non-pubic, unagendized [sic] "spoke and wheel" and/or "daisy chain" meetings of the HCSD Board" at which Defendants

1   violated the Brown Act and HCSD bylaws.  Id.  Plaintiff adds that Puckett created and mailed

2   false government documents with the assistance of Bowles.  See id.  Plaintiff alleges that Puckett

3   destroyed records of the HCSD to prevent scrutiny and accountability, and to deprive Plaintiff of

4   her right to notice, access, and ability to petition for redress of grievances.  See id.

5         Plaintiff further alleges that Defendant Puckett conspired with other Board

6   Defendants, as well as Dingman and Bowles, to avoid having his (Puckett's) water meter read,

7   resulting in Puckett being only minimally charged for water.  See id. at 8.  According to Plaintiff,

8   Puckett "ratified" this by refusing to call for elections for the HCSD Board of Directors, assuring

9   that the Board Defendants would all remain in office "regardless of expiration of their terms."  Id.

10              2.      Hanson

11         As with Plaintiff's allegations against Defendant Puckett, Plaintiff's allegations

12   relating to Defendant Hanson are vague and largely conclusory, attempting to tie Defendant

13   Hanson to the alleged behavior of others through some combination of "aiding," "abetting,"

14   "ratifying," or similar language.  Plaintiff claims that Defendant Hanson, "in addition to agreeing,

15   assisting, aiding, abetting, and ratifying the conduct attributed to Puckett. . . also agreed to

16   undertake, conspired with, aided, and abetted the other Board Defendants (and thus the HCSD),

17   Kampa, Bowles, and Dingman," who were acting to commit various allegedly wrongful acts.

18   ECF No. 1, pg. 9. Plaintiff makes no specific claims about Defendant Hanson's individual

19   conduct.  Instead, Plaintiff alleges that Defendant Hanson was in some unspecified way

20   connected with or assisted the activity in question. However, as to "some of" the conduct

21   allegedly involving Defendant Puckett, she alleges that, on information and belief, the actions in

22   question "were actually unilaterally taken by Hanson and/or Puckett outside of any official,

23   properly noticed or agendized [sic] Board meetings." ECF No. 1, pg. 4 (emphasis in original).

24   She alleges that such actions violate the Brown Act and California Government Code § 61045.

25   See ECF No. 1, pg. 4, n.7.

26   / / /

27   / / /

28   / / /

7

Plaintiff also claims that Defendant Hanson "acted to prevent votes of the electors (including Plaintiff) regarding those matters specified as requiring voter approval in the Bylaws; acted to present the unagendized [sic], wrongful indemnification of Kenneth King as an improper, closed-session item on June 12, 2019; and, acted to wrongfully divert HCSD funds as payments and [for] services in excess of contract and otherwise to Dingman." ECF No. 1, pg. 8. As to the allegation that Plaintiff was prevented from voting, Plaintiff states that Defendant Hanson refused to call for HCSD Board elections, despite being the Board's Secretary. See ECF No. 1, pg. 9. As to the "wrongful indemnification" and "wrongful diversion of funds" allegations, although Plaintiff does use the word "acted" for these allegations, she still does not elaborate as to specifically how Defendant Hanson conducted any of these actions or why they were wrongful.

Plaintiff further alleges that Defendant Hanson "approved, ratified, aided, abetted, and assisted Dingman (and his dog) in Dingman's wrongful occupation, residence, and (non-compensated to the HCSD) personal use of the water treatment facility and its utilities." Id. Once again, Plaintiff does not elaborate on this accusation.

Finally, Plaintiff alleges that Defendant Hanson "acted in concert with the other Board Defendants, Kampa, Dingman, and Bowles to avoid having her water meter read [sometimes] so that proper fees and charges would not be assessed on her . . . with her concurrence and ratification." Id. This allegation, too, is bereft of details.

### 3. Tulledo

Plaintiff does not set forth any allegations of specific conduct by Defendant Tulledo. Instead, Plaintiff alleges only that Defendant Tulledo "agreed to undertake, assisted, conspired with, aided, and abetted the other Board Defendants (and thus the HCSD), Kampa, Bowles, and Dingman, in acting to undertake the wrongful conduct as set forth in the [sections] concerning the HCSD, Dingman, Kampa, Dixon, Puckett, and Hanson" in some unspecified manner. Id.

/ / /

/ / /

/ / /

8

1          4.      Brown

2          Plaintiff does not set forth any allegations of specific conduct by Defendant

3    Brown. Instead, and as with Tulledo, Plaintiff alleges only that Defendant Brown "agreed to

4    undertake, conspired with, aided, and abetted the other Board Defendants (and thus the HCSD),

5    Kampa, Bowles, and Dingman, in undertaking the wrongful conduct set forth in the sections

6    concerning Puckett, Kampa, Dixon, Dingman, and Hanson, and including the wrongful waivers

7    and improprieties relating to water charges and fees" in some unspecified manner. Id. at 10.

8          5.      Kampa

9          Plaintiff alleges that, as the HCSD General Manager, Defendant Kampa "was

10   bound by his contractual and statutory duty to oversee the day-to-day operations of the HCSD

11   pursuant to Government Code § 61051; to supervise its employees, contractors, and agents; to

12   effect the duties and policies mandated by law . . ., the HCSD Bylaws, and as directed by the

13   Board; and, to deal with customer concerns." ECF No. 1, pgs. 11-12. Plaintiff states that

14   Defendant Kampa never performed any of these duties, did not have a valid business license to

15   operate as an independent contractor within [Siskiyou County] . . ., and violated numerous

16   provisions of Federal[,][2] State[3], and local[4] law concerning operation [of] the HCSD . . . and thus

17   engaged in unfair business practices as defined in California Bus. and Prof. Code [§] 17200, et

18   seq." ECF No. 1, pg. 12.

19         Plaintiff also alleges that Defendant Kampa "was a participant in, agreed with,

20   aided, abetted, and assisted the Board Defendants, Dixon, Dingman, and Bowles, with [their]

21   wrongful and improper conduct . . . and especially worked with those persons to thwart

22   [Plaintiff's] right to vote . . . and the other electors of the District as provided in the Bylaws."

23   ECF No. 1, pg. 12. She further submits that Defendant Kampa "additionally, repeatedly, and

---

24         [2]     Plaintiff does not specify which federal laws Defendant Kampa is alleged to have
     violated, nor does she specify how she believes he violated them.
25         [3]     Although Plaintiff does list a number of state laws earlier in the relevant
     paragraph, she does not indicate what specific provisions Defendant Kampa is alleged to have
26   violated, nor does she specify how she believes he violated them. She does point to something
     being "set forth herein," but it is unclear whether she is referring to the previous allegations she
27   has levelled against Defendants generally or whether she is referring to the list of California state
     codes she has just listed (omitted from this summary).
28         [4]     Once again, Plaintiff does not specify what laws she is talking about.

willfully refused and failed to comply with CPRA requests [related to the HCSD Board] directed to him by Plaintiff and other members of the public . . . without any due process of law" and "with the agreement[] and ratification of the Board Defendants." ECF No. 1, pg. 12. Plaintiff does not submit any specific factual allegations in support of this claim.

> 6.    Bowles

Plaintiff alleges that at all times material, Defendant Bowles was an independent contractor "who held herself out as an officer, employee, and/or agent of the HCSD." ECF No. 1, pg. 12. Plaintiff also alleges that Defendant Bowles "was acting under the color of law and of her office as Bookkeeper." ECF No. 1, pg. 12.

Without making any real factual allegations in particular, Plaintiff submits that Defendant Bowles "conspired with, aided, abetted, and assisted the Board Defendants (and thus the HCSD), Kampa, and Dingman, in acting to undertake" their allegedly wrongful actions. ECF No. 1, pg. 12. Plaintiff also alleges that Defendant Bowles colluded with the Board Defendants and Defendants Kampa, Dixon, and Dingman to advance their wrongful conduct, particularly violations of the Brown Act. Plaintiff's complaint is slightly unclear, but it appears that she alleges that Defendant Bowles met or communicated with these individuals individually, serially, and as a group, or acted "as the 'hub' for 'spoke and wheel' meetings, and/or a link in the 'chain' of daisy-chain meetings . . . for the purpose of discussing (and agreeing to act on) official HCSD-related 'public business.'" ECF No. 1, pg. 12. Plaintiff alleges that this conduct, which she claims took place outside of properly noticed public meetings, constitutes a violation of the Brown Act and California Constitution. See ECF No. 1, pg. 13.

Plaintiff further alleges that Defendant Bowles "assisted" in the alleged wrongful acts of other Defendants by use of the U.S. Mail to send "false documents" to customers of the HCSD and by destroying various HCSD documents. See ECF No. 1, pg. 13. Specifically, Plaintiff alleges that HCSD customers were sent bills containing incorrect charges and other billing information. See ECF No. 1, pg. 13 n.27. She also alleges that Defendant Bowles participated in a "scheme" by the Board Defendants and Kampa to deny Plaintiff the same information and "access to government" as were available to other HCSD customers by failing to

10

1   include relevant notices and documents with Plaintiff's bills. See ECF No. 1, pg. 13 n.22. Plaintiff

2   does not allege facts which would suggest that destroying HCSD documents was wrongful, rather

3   than a routine part of office management.

4           Plaintiff additionally alleges that Defendant Bowles worked in concert with the

5   Board Defendants and Defendant Dingman to improperly divert HCSD funds, specifically by

6   issuing Defendant Dingman "paysheets" for services that had not officially been approved by the

7   HCSD Board at any public meeting, and/or services or hours of work that Dingman had not

8   actually performed, and/or resulting in paychecks far in excess of the compensation defined by

9   Dingman's employment contract with the district or that he was rightfully entitled to. See ECF

10  No. 1, pg. 13.

11          Furthermore, Plaintiff alleges that Defendant Bowles aided the Board Defendants

12  in achieving their wrongful objectives by improperly imposing, waiving, or failing to collect

13  various water fees and charges for themselves and favored customers, as well as altering and

14  falsifying HCSD records of those customers' accounts to conceal improper billing practices. See

15  ECF No. 1, pgs. 13-14. For example, Plaintiff alleges that Defendant Bowles would fail to bill

16  commercial property at the commercial rate, would fail to charge customers for multiple habitable

17  structures, would reduce set rates for certain residential customers, or would alter past billing

18  records for some customers to erase past billing at the proper rate upon the instruction of the

19  Board Defendants, Hanson, and/or Puckett without voter approval; she also alleges that

20  Defendant Bowles failed to utilize the processes defined in the Bylaws to collect on delinquent

21  accounts. See ECF No. 1, pg. 13 n.26. Plaintiff alleges, without facts, that this conduct occurred

22  at the behest of Defendants Hanson, Puckett, and/or Kampa. See ECF No. 1, pg. 14. Plaintiff also

23  alleges, without facts, that one of the goals of these acts was to deny Plaintiff and other District

24  electors due process and the right to petition concerning these actions (by denying them the right

25  to vote on them as provided by the Bylaws), in retaliation for Plaintiff's exercise of free speech

26  and petition (via court actions) concerning the HCSD. See ECF No. 1, pg. 14.

27  / / /

28  / / /

11

Plaintiff alleges that Defendant Bowles' actions resulted in substantial lost income to the HCSD and constituted a breach of her fiduciary duty as bookkeeper and accountant to the HCSD; Plaintiff further alleges that paying Defendant Bowles for these actions was a waste and/or illegal expenditure of public funds. <u>See</u> ECF No. 1, pg. 14. Plaintiff therefore submits that she is entitled to seek compensation on behalf of the district pursuant to Code of Civil Procedure 526a and § A-9(26) of the HCSD Bylaws. <u>See</u> ECF No. 1, pg. 14. Plaintiff claims that Defendant Bowles' acts threatened the health and safety of the public and Plaintiff, imperiled Plaintiff's personal property and real property values, and reduced the marketability of her real property. <u>See</u> ECF No. 1, pg. 14.

### 7.   <u>Dingman</u>

Plaintiff alleges that at all times material, Defendant Dingman was an officer, employee, and/or agent of the HCSD, and was acting under the color of law in his roles as systems operator, shift operator, watermaster, and/or water plant operator. Plaintiff claims that Defendant Dingman, in coordination with the Board Defendants and Defendants Bowles, Kampa, and Dixon, (1) helped create and submit false government documents to the HCSD files and the California State Water Board; (2) helped falsify, withhold from Plaintiff, and/or destroy public records and government documents; (3) failed to comply with the CWA, SDWA and HCSD Bylaws related to qualifications for the positions he held; (4) failed to comply with his duties and responsibilities under the HCSD Bylaws; (5) failed to completed required licensure activities required by the California Department of Health in order to operate the HCSD water facilities; (6) refused to allow the public to inspect records concerning water production and treatment during normal business hours as required under the CPRA; (7) refused to allow the public to inspect his employee timesheets; (8) falsified his timesheets to reflect work not performed or hours not worked; (9) acted "wrongfully" to prevent enforcement of state and federal laws and HCSD Bylaws relating to water production, as well as the CPRA as related to Plaintiff's records requests; (10) failed to maintain and use the HCSD's "creek diversion" and associated water rights, "jeopardizing the HCSD's diversion rights . . . and the supply of water to Plaintiff's home and property"; (11) routinely and consistently added excessive, illegal, and toxic amounts of

12

chlorine to the water system, without notifying the public or state Water Board; (12) permitted the outflow of chlorinated water from 'Tank 2' into the drainage of the Klamath River; and (13) in agreement with the Board Defendants, Kampa, and HCSD, failed to read the meters of all HCSD customers each month for the purposes of accurate billing. ECF No. 1, pg. 15. Plaintiff also mentions contaminated water from well #3, but only in passing and without any clarifying information whatsoever. See ECF No. 1, pgs. 15-16.

Plaintiff additionally alleges that Defendant Dingman occupied the HCSD water treatment plant as a daily residence, storage unit, and "habitat" for himself and his dog, and that Defendant Dingman did not pay for his associated electricity use or general use of the facilities. See ECF No. 1, pg. 16.

Plaintiff argues that Defendant Dingman's alleged overcompensation constitutes "an improper gift of public funds" under California state law (she does provide specific citations). ECF No. 1, pg. 16. She also contends that Defendant Dingman's conduct was willfully negligent, unlawful, and a nuisance per se, and that his conduct damaged Plaintiff's permanent property and degraded her property value. See ECF No. 1, pg. 16.

8.    Dixon

Plaintiff submits that, during his employment or contract with the HCSD, Defendant Dixon lacked the required Siskiyou County business license. See ECF No. 1, pg. 16. Plaintiff claims that, in "purportedly acting" as Chief Operator and Operator of Record of the HCSD water treatment facilities, Defendant Dixon had a duty under HCSD Bylaws and federal and state law to inspect, oversee, supervise, perform, and directly control the daily operation of the HCSD's water treatment plant and distribution system. See ECF No. 1, pgs. 16-17. Plaintiff contends that Defendant Dixon consistently failed to actually perform his statutorily-required duties. See ECF No. 1, pg. 17. In particular, Plaintiff submits that Defendant Dixon failed to maintain and use the "creek diversion" of the HCSD and associated water rights (specifically, Rancheria Creek), jeopardizing the HCSD's diversion rights with the state; acted "in conjunction with" the HCSD and Board Defendants to claim independent contractor status when he should have properly been classified as an employee; instructed Defendant Dingman to improperly and

1   constantly draw the HCSD's water supply from three HCSD wells (against the instructions of the

2   HCSD's Public Engineer); permitted Defendant Dingman to add excessive chlorine to the water

3   he was treating; charged the HCSD for performing the above-described duties but did not actually

4   perform them and was almost always absent from the facilities; and permitted uncertified

5   operators to work on the water system. See ECF No. 1, pgs. 17-18; ECF No. 1, pg. 17 n.35.

6   Plaintiff contends that, as a result of these actions, over pumping occurred and the water supplied

7   to Plaintiff was of degraded and dangerous quality. See ECF No. 1, pg. 17 n.35. As to Defendant

8   Dingman, Plaintiff further alleges that Defendant Dixon actually *instructed* Defendant Dingman

9   to "illegally, wrongfully, and improperly assert control over the HCSD systems." ECF No. 1, pg.

10  18.

11          Plaintiff further alleges that Defendant Dixon conspired with the Board

12  Defendants to receive legal services outside of his contract and "indemnify" him from multiple

13  legal actions without using proper lawful channels to authorize the representation he received.

14  See ECF No. 1, pg. 17; ECF No. 1, pg. 17 n.36. She also contends that Defendant Dixon

15  conspired with the Board Defendants "(and thus the HCSD itself)" and Defendants Kampa,

16  Bowles, and Dingman to create and file false records of HCSD operations; operate the facilities in

17  an unlawful manner; prevent access to public water treatment plant records; and "to thus deny

18  Plaintiff and other members of the public the right to petition, equal protection, and due process

19  of the laws relating to the lawful and safe operation of the HCSD." ECF No. 1, pg. 17-18.

20          **C.      Legal Theories**

21          Plaintiff alleges various federal and state law theories of relief, which Plaintiff

22  calls "Counts." See id. at 20-31.  In doing so, Plaintiff incorporates all earlier allegations. See id.

23  at 19-20.  Plaintiff's federal law claims are as follows:[5]

24          Count I        Violation of right to free speech, assembly, and petition.

25          Count II       Deprivation of due process and equal protection; unlawful seizure.

26          Count III      Conspiracy for deprivation of right to vote.

27

28          [5]        Plaintiff refers to all of her federal claims as the "First Claim for Relief"

| Count IV | Violation of Clean Water Act. |
| Count V | Deprivation of rights to due process and equal protection. |
| Count VI | Deprivation of rights to equal protection and due process. |
| Count VII | Deprivation of rights to equal protection, due process, and right to vote. |
| Count VIII | Retaliation for exercise of constitutional rights. |
| Count IX | Violation of the ADA (against HCSD and Board Defendants). |
| Count X | Violation of the ADA. |
| Count XI | Deprivation of rights to due process and equal protection. |
| Count XII | Violation of Fourth Amendment. |

Id. at 19-24.

Plaintiff's state law claims are as follows:[6]

| Count I | Violation of HCSD bylaws |
| Count II | Negligence. |
| Count III | Brown Act violation; gifts of public funds. |
| Count IV | Gifts of public funds; false claims; fraud (against Dingman). |
| Count V | Gifts of public funds (against Bowles). |
| Count VI | Diversion of, and fists of, public funds (against Hanson). |
| Count VII | Gifts and waste of public funds (Doe Defendants). |
| Count VIII | Violation of Article 1, section 3, of the California Constitution. |
| Count IX | Unfair business practices (against Board Defendants and Bowles). |
| Count X | Nuisance (against HCSD, Board Defendants, Dingman, and Dixon). |
| Count XI | Failure to impose standby fee and collect due fees and taxes. |
| Count XII | Unfair business practices (against Kapma and Dixon). |
| Count XIII | Negligence (against HCSD, Board Defendants, Kampa, Dingman, and Dixon). |
| Count XIV | Violation of California Public Records Act (against HCSD, Board Defendants, and Kampa). |

---

[6] Plaintiff refers to all of her state law claims as the "Second Claim for Relief."

Count XV          Willful and/or negligent infliction of emotional distress.

Count XVI         Nuisance.

Count XVII        Purported official acts of the Board Defendants are void.

Count XVIII       Improperly unbilled fees and charges; gifts of public funds.

Count XIX         Waste of public funds (against HCSD and Board Defendants).

Count XX          Violation of the California Public Records Act; waste of public funds.

Count XXI         Violation of Public Contracts Code, Uniform Construction Costs Accounting Act.

Id. at 24-31.

**D.     Alleged Damages and Relief Sought**

Plaintiff asserts:

> 98.    Plaintiff alleges that the actions by the specified Defendants as set for the in each of the foregoing "counts" of her First and Second Claims for Relief, and as incorporating the factual allegations against each Defendant as specified in their respective Sections, caused general, special and pecuniary damages to Plaintiff, in an amount to be proven at trial, but in no event less than $50,000.00 per event, circumstance, alleged tort, or statutory violation.

ECF No. 1, pgs. 31-32 (emphasis in original).

Plaintiff also seeks punitive damages.  See id. at 32.

Plaintiff further demands an order commanding the HCSD and Board Defendants to immediately identify any persons or entities who received reduced or waived water charges in violation of the HCSD Bylaws or any other statue and to recoup those charges. See ECF No. 1, pg. 32.

Plaintiff additionally that the Board Defendants pay restitution for any gifts of public funds arising from their allegedly wrongful acts or otherwise not collected by them. See ECF No. 1, pg. 32.

Plaintiff also requests an order commanding the HCSD to immediately cease diverting funds collected for water service away from the maintenance of water infrastructure. See ECF No. 1, pg. 32.

/ / /

1    Plaintiff further requests an order commanding the HCSD to, within thirty days,
2    hire certified water plant operators and to henceforth employ only state-certified operators to
3    control water processing operations and facilities. See ECF No. 1, pg. 33.

4    Plaintiff also requests a declaration that the operation of HCSD water facilities by
5    Dingman was, by virtue of his lack of certification, a nuisance per se, illegal, in violation of the
6    California Health and Safety Code (specific citation in original), and that those sections overrule
7    any contrary administrative rules or exceptions by any agency. See ECF No. 1, pg. 33.

8    Plaintiff further requests preliminary and permanent injunctions against Clint
9    Dingman to prevent him from using the HCSD water treatment facility as a residence or for
10   storage. See ECF No. 1, pg. 33.

11   Plaintiff additionally requests preliminary and permanent injunctions against the
12   HCSD which prevent them from allowing the overflow of chlorinated water from Tank 2 and the
13   "unstored flow of water" from Well 3. See ECF No. 1, pg. 33.

14   Plaintiff further requests an order declaring any act of the Board Defendants and
15   HCSD in violation of the Brown Act (on June 12, 2019), the HCSD Bylaws (at any time), or state
16   law at any time material to the complaint, to be "*ultra vires*" and/or void for illegality. See ECF
17   No. 1, pg. 33. She also seeks an order declaring such acts pertaining to issues rightfully within the
18   control of HCSD voters under the Bylaws but undertaken without voter approval as null and void.

19   Finally, Plaintiff seeks attorney fees and costs of suit incurred, and for such other
20   and further relief as this Court may deem proper. See ECF No. 1, pg. 33.

21   / / /
22   / / /
23   / / /
24   / / /
25   / / /
26   / / /
27   / / /
28   / / /

## II.  PLAINTIFF'S LITIGATION HISTORY[7]

Kimberly Olson, the plaintiff in this case, and Roger Gifford are frequent litigants in the Eastern District of California as well as the Siskiyou County Superior Court, which has declared Olson and Gifford to be vexatious litigants primarily based on frivolous lawsuits alleging mismanagement of HSCD by its directors, officers, and others.  With respect to Plaintiff's allegations against HCSD and related defendants, the following actions are pending in the Eastern District in addition to the instant action:

> Olson v. Hornbrook Community Services District, et al.,
> 2:15-CV-0646-KJM-DMC.
>
> Olson v. Slote, et al.,
> 2:16-CV-0956-KJM-EFB.
>
> Gifford v. Kampa, et al.,
> 2:17-CV-2421-TLN-DMC.
>
> Gifford v. Hanson, et al.,
> 2:21-CV-0119-TLN-DMC.

Each of these actions raises claims against HCSD, its former and/or current board members, and others regarding alleged mismanagement of HCSD.  For whatever reason, the allegations in these actions are strikingly similar.  Additionally, the format, wording, phrases used, organization, and styling of claims in all of the pleadings filed by Olson and Gifford in these cases are nearly identical.  Gifford v. Kampa, et al. has been related to Gifford v. Hanson, et al.  See ECF No. 70 in case no. 2:17-CV-2421-TLN-DMC. (related-case order).

Gifford v. Hanson, et al., proceeds on a complaint which is nearly identical to the original complaint in the instant action.  On March 3, 2022, the undersigned issued findings and recommendations in the related case recommending that the original complaint be dismissed with leave to amend.  See ECF No. 28 in case no. 2:21-CV-0119-TLN-DMC. The matter is currently before the District Judge.

---

[7]   **Error! Main Document Only.**The Court may take judicial notice pursuant to Federal Rule of Evidence 201 of matters of public record.  See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008).  Thus, this court may take judicial notice of state court records, see Kasey v. Molybdenum Corp. of America, 336 F.2d 560, 563 (9th Cir. 1964), as well as its own records, see Chandler v. U.S., 378 F.2d 906, 909 (9th Cir. 1967).  The Court's discussion in this section is based on judicially noticed state and federal court records.

18

1    Other active pending cases filed by Olson and Gifford are:

2        Gifford v. Hornbrook Fire Protection District, et al.,
         2:16-CV-0596-DAD-DMC.
3
         Olson v. Bynum, et al.,
4        2:20-CV-2481-TLN-KJN.

5        Olson v. Puckett, et al.,
         2:21-CV-1482-KJM-DMC.
6
         Gifford v. Dingman, et al.,
7        2:21-CV-1726-KJM-DMC.

8    The last two cases listed above – Olson v. Puckett, et al. and Gifford v. Dingman,

9    et al. – illustrate how Olson and Gifford appear to file cases in tandem.  Olson initiated her

10   lawsuit in Olson v. Puckett, et al. in August 2021 on allegations that HCSD and its officers and/or

11   directors improperly disconnected her water service.  See ECF No. 1 in case no. 2:21-CV-1482-

12   KJM-DMC.  Among Olson's allegations is the contention that a vehicle was unlawfully towed

13   from her property in order to allow for access to equipment connecting Olson's home to the

14   district's water supply.  See id.  Apparently, that vehicle belonged to Gifford, who a month later

15   filed his own lawsuit, captioned Gifford v. Dingman, et al., in September 2021 on virtually

16   identical allegations as those presented in Olson v. Puckett, et al.  See ECF No. 1 in case no. 2:21-

17   CV-1726-KJM-DMC.  As with other Olson/Gifford actions, the complaints in Olson v. Puckett,

18   et al. and Gifford v. Dingman, et al. bear striking similarities in form, organization, phrases used,

19   and legal theories presented.[8]

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   _____

27       [8]    Defendants have filed a motion to dismiss in Olson v. Puckett, et al., which has been submitted on the record without oral argument and is pending.  See ECF No. 47 in case no.
28   2:21-CV-1482-KJM-DMC.  Defendants' response to the complaint in Gifford v. Dingman, et al. is due in September 2022.  See ECF No. 34 in case no. 2:21-CV-1726-KJM-DMC.

1    In addition to these active pending cases, Olson and Gifford have, collectively,

2    filed nine prior actions[9], none of which resulted in a judgment in favor of either Olson or Gifford,

3    and only one of which survived past the pleading stage.  Closed cases filed by Olson and Gifford

4    are:

5         Olson v. Kennard, et al.,
          2:00-CV-0872-WBS-GGH.
6         Dismissed for failure to comply with court order.

7         Olson v. Lemos, et al.,
          2:06-CV-1126-TLN-CMK.
8         Voluntarily dismissed at pleading stage.

9         Olson v. City of Etna, et al.,
          2:08-CV-0882-FCD-EFB.
10        Voluntarily dismissed shortly after scheduling order issued.

11        Olson v. Commissioner of Social Security,
          2:11-CV-2059-MCE-CMK.
12        Dismissed for failure to state a claim.

13        Gifford v. Siskiyou County Sheriff, et al.,
          2:11-CV-2484-KJM-CMK,
14        Voluntarily dismissed at pleading stage.

15        Gifford v. Hornbrook Community Services District, et al.,
          2:15-CV-1274-MCE-AC.
16        Dismissed for failure to state a claim.

17        Gifford v. Puckett, et al.,
          2:16-CV-0955-KJM-GGH.
18        Dismissed for failure to state a claim.

19        Olson v. Rural Community Assistance Corp., et al.,
          2:21-CV-0700-KJM-AC.
20        Voluntarily dismissed.

21        Olson v. Carter, et al.,
          2:21-CV-0929-JAM-CKD.
22        Voluntarily dismissed at screening stage.

23   / / /

24   / / /

25   / / /

26   _____

27        [9]    In another action filed by Olson, Gifford was a named defendant, apparently
     because Gifford was serving at the time in some capacity with the HCSD.  Gifford is also a
     defendant in Olson v. Hornbrook Community Services District, et al., case no. 2:15-CV-0646-
28   KJM-DMC, in which Olson seeks approval of a "settlement" with Gifford.

                                          20

# III.  DISCUSSION

In his motion to dismiss, Defendant Kampa primarily argues that Plaintiff's complaint is too vague and conclusory to meet the Rule 8 pleading standard set forth in <u>Twombly</u> and <u>Iqbal</u>, outlined above.  <u>See</u> ECF No. 10-1, pgs. 1-4.  Next, Defendant Kampa argues that those "counts" which are not alleged specifically against him should be dismissed.  <u>See id.</u> at 5.  Finally, Defendant Kampa raises the following more specific arguments as to the various federal and state law claims asserted in Plaintiff's complaint: (1) Plaintiff cannot bring causes of action directly under the United States Constitution; (2) Plaintiff cannot establish a claim for violation of procedural due process; (3) Plaintiff cannot establish a claim for any equal protection violation; (4) Plaintiff's Fourth Amendment claims fails as a matter of law; (5) Plaintiff's Clean Water Act claim fails because Plaintiff has not alleged facts sufficient to establish standing; (6) Plaintiff's cause of action under the Public Contract Code and Uniform Construction Costs Act lacks facts sufficient to state a claim for relief; and (7) Plaintiff's claims for intentional and negligent infliction of emotional distress fails as a matter of law.  <u>See id.</u> at 5-9.

Defendants HCSD, Dingman, Puckett, Hanson, Tulledo, Brown, and Dixon join in Defendant Kampa's motion.  <u>See</u> ECF No. 35.

For the reasons discussed below, the Court finds Defendant's Rule 8 argument to be persuasive and dispositive of the pending motion to dismiss.  The Court will recommend that Defendant's motion to dismiss be granted and that Plaintiff's original complaint be dismissed with leave to amend.  Finally, in order to provide guidance to Plaintiff, who is proceeding pro se, in filing an amended complaint, the Court will discuss various specific claims.

## A.    <u>Rule 8</u>

Rule 8's pleading requirements are not met by a "complaint that contains conclusion or surmise and requires a court to decide whether events not pleaded could be imagined in a plaintiff's favor." <u>Levin v. Miller</u>, 763 F.3d 667, 671 (7th Cir. 2014).  Rather, in order to establish plausibility, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  <u>Eclectic Props. E., LLC v. Marcus and</u>

21

1   Millichap Co., 751 F.3d 990, 996 (9th Cir. 2014 (internal quotation and citation omitted).

2   ". . .[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief,

3   such that it is not unfair to require the opposing party to be subjected to the expense of discovery

4   and continued litigation." Id.  While pleadings of pro se litigants are held to less rigid standards

5   than those drafted by attorneys, see Haines v. Kerner, 404 U.S. 519, 520-522 (1972), even pro se

6   pleadings "must meet some minimum threshold in providing a defendant with notice of what it is

7   that it allegedly did wrong," Brazil v. United States Dept. of Navy, 66 F.3d 193, 199 (9th Cir.

8   1995).

9           Although the Federal Rules adopt a flexible pleading policy, a complaint must give

10  fair notice and state the elements of the claim plainly and succinctly. See Jones v. Community

11  Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984). Plaintiff must allege with at least some degree

12  of particularity overt acts which defendants engaged in that support Plaintiff's claim. See id. The

13  allegations must be short and plain, simple and direct, and describe the relief Plaintiff seeks. See

14  Fed. R. Civ. P. 8(a); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002); Galbraith v.

15  County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002).

16          In Olson v. Slote, et al., which proceeds on an amended complaint against HCSD

17  and others that is, unsurprisingly, almost identical to the amended complaint currently before the

18  Court in the instant action, Judge Brennan observed as follows in recommending Plaintiff's first

19  amended complaint be dismissed without further leave to amend:

20          As explained below, the first amended complaint suffers from the
            same deficiencies as plaintiff's original complaint, and it too must be
21          dismissed for failure to state a claim.

22                              *  *  *

23          Plaintiff's first amended complaint asserts claims under 42 U.S.C.
            §§ 1983, 1985, 1986; 1988; Title II of the Americans with Disabilities Act
24          ("ADA"), 42 U.S.C. §§ 12131, et seq., the Safe Drinking Water Act, 42
            U.S.C. §§ 300f et seq.; the Clean Water Act, 33 U.S.C. §§ 1251 et seq.; 18
25          U.S.C. § 1513, as well as more than 20 state law claims. ECF No. 7. The
            claims are brought against 16 defendants, including the Hornbook
26          Community Services District ("HCSD") and its directors, agents, and
            customers; the Hornbook Community Bible Church and its employees;
27          Basic Labs; and the law firm of Kirsher, Winston & Boston. Id. The crux
            of the amended complaint is that defendants participated in grand a
28          conspiracy to mismanage HCSD.

                                        22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Like her earlier complaint, plaintiff's amended complaint fails to comply with Rule 8. Rather than providing a short and plain statement for each of plaintiff's claims, the 58-page amended complaint consists largely of vague and conclusory allegations concerning various events that allegedly occurred from 2004 through 2017. Further muddling the matter, numerous allegations in the amended complaint that appear unrelated, or only tangentially related, to plaintiff's dispute with the defendants' alleged mismanagement of HCSD. *See, e.g., id.* ¶¶ 15, 18 (alleging HCSD directors permitted defendant Dingman and his dog to occupy a water treatment facility for personal use and storage); ¶ 17 (alleging that defendant Puckett stored hazardous material on his property).

As drafted, it is nearly impossible to discern the specific claims plaintiff intends to allege against each of the 17 named defendants, as well as the particular facts supporting each claim. Plaintiff purports to assert 17 federal causes of action, many setting forth multiple claims within the same cause of action. For instance, plaintiff's 17th "count" is entitled "Violation of Fourth Amendment." *Id.* at 42. But the allegations provided in connection with that cause of action do not implicate the Fourth Amendment. Instead, the single paragraph supporting that claim alleges defendants violated California's Brown Act, Cal. Gov't Code §§ 54950, *et seq.* and plaintiff's right to due process by holding "non-agendized" HCSD board meetings that included segments that were not open to the public. [footnote omitted]. *Id.* ¶ 127. Further, each of plaintiff's claims confusingly seek to incorporate by reference various sections of the complaint. Indeed, the amended complaint includes a section entitled "Incorporation of Factual Allegations into Counts," under which plaintiff explains that she seeks to incorporate earlier sections of the complaint into her claims. *Id.* at 7. As previously explained to plaintiff, proceeding in this fashion renders it impossible for the court and defendants to ascertain the factual basis for each particular claim.

* * *

But even if the court were able to ascertain plaintiff's claims, as well as the specific allegations purporting to support each claim, dismissal would still be warranted. Despite spanning 58 pages, the amended complaint is nearly devoid of specific factual allegation. Instead, it is replete with redundant legal statements and vague and conclusory allegations that fail to support a cognizable legal claim. *See, e.g., id.* ¶ 105 (alleging defendants, "in acting as set forth above in manners adverse to Plaintiff, did so willfully, with intent to interfere with, impede, coerce Plaintiff into abandoning, and in retaliation for, her excise of statutory and constitution rights to speak freely, petition the government, and courts, for redress of grievances; and her attempt to assert the right to vote . . . [,] violated Plaintiff's First Amendment rights to assemble with the other electors . . . ."), ¶ 113 ("Defendants HCSD and Board Defendants improperly conspired with, were unduly influenced, and engaged in corrupt activity with Defendants HCBC, Crittenden, and Bowels, in order

/ / /

/ / /

/ / /

1         to utilize the Board Defendants authority under color of State law, for the HCBC and Crittenden to wrongfully receive gifts of public funds . . . .").

2

3         ECF No. 8, pgs. 2-4, in case no. 2:16-CV-0956-KJM-EFB.[10]

4         The undersigned includes Judge Brennan's analysis here for two reasons.  First, it

5 demonstrates the close similarity among the various pending Olson and Gifford actions alleging

6 mismanagement of HCSD pursuant to some kind of grand scheme.  Second, Judge Brennan's

7 analysis applies perfectly and point by point to the instant action, again because the complaints

8 filed by Olson and Gifford are so similar.[11]

9         As in <u>Olson v. Slote, et al.</u>, Plaintiff's complaint, which is 33 pages long, is largely

10 written in vague and conclusory legal terms, such as "aided and abetted," which are repeated

11 throughout and which concern wide range of events occurring over several years (here, 2017

12 through 2019).  Also mirroring <u>Olson v. Slote, et al.</u>, the complaint here contains a number of

13 tangential and seemingly unrelated allegations.  The similarly between the two cases is striking.

14 For example, just as in <u>Olson v. Slote, et al.</u>, Plaintiff alleges in the instant case that Dingman was

15 improperly permitted to live on district property with his dog.  <u>See</u> ECF No. 1, pg. 16.  Not

16 surprisingly, Gifford makes the exact same claim in <u>Gifford v. Kampa, et al.</u>  <u>See</u> ECF No. 85, pg.

17 19, in case no. 2:17-CV-2421-TLN-DMC (Gifford's second amended complaint).

18 / / /

19 / / /

20 / / /

21        [10]    Judge Brennan's findings and recommendations were issued on September 25,

22 2020.  Olson filed objections on October 2, 2020, and the matter is pending before the District Judge.

23        [11]    The Court recommends below that <u>Olson v. Slote, et al.</u>, currently assigned to Judge Brennan, be reassigned to the undersigned for two reasons.  First, the matter is related to

24 <u>Olson v. Hornbrook Community Services District, et al.</u>, 2:15-CV-0646-KJM-DMC, and <u>Olson v. Hornbrook Community Services District, et al.</u>, 2:19-CV-2127-KJM-DMC, within the

25 meaning of Local Rule 123(a) and assignment of all three matters to the same judges would result in judicial economy.  Second, <u>Olson v. Slote, et al.</u> should be assigned to the undersigned

26 pursuant to the Local Rule governing direct assignment of cases filed by pro se litigants residing in Siskiyou County.  Based on a review of the docket in <u>Olson v. Slote, et al.</u>, it appears the case

27 was incorrectly assigned to Judge Brennan when it was opened.  The Court's recommendation now corrects that clerical error.  Because the undersigned agrees with Judge Brennan's analysis

28 and recommendation in <u>Olson v. Slote, et al.</u>, no delay will be occasioned by a need for the undersigned to conduct a new review of the matter upon reassignment.

The precise fit of Judge Brennan's analysis in <u>Olson v. Slote, et al.</u> to this case is further illustrated in the context of the number of claims raised and the way they are presented. Here, Plaintiff raises 12 federal claims, many with various sub-claims, and 21 state law claims, also with sub-claims.  And as in <u>Olson v. Slote, et al.</u>, Plaintiff here attempts to incorporate other sections of her pleading by reference into the various federal and state law claims.  In fact, both cases contain the exact same section entitled "Incorporation of Factual Allegations into Counts." <u>See</u> ECF No. 1 pgs. 19-20.  The undersigned agrees with Judge Brennan's conclusion that "proceeding in this fashion renders it impossible for the court and defendants to ascertain the factual basis for each particular claim." ECF No. 8, pg. 3, in case no. 2:16-CV-0956-KJM-EFB.

Overall, like <u>Olson v. Slote, et al.</u>, and just as Judge Brennan observed in that case, Plaintiff's complaint here is bereft of specific factual allegations explaining who did what, when, how, and why.  Nor does the complaint here link any specific facts to specific defendants and the specific elements of the legal theories asserted.  Even allowing a wide range of latitude because Plaintiff is proceeding pro se, the Court simply cannot find that Plaintiff's complaint complies with Rule 8 such that Defendants have received fair notice sufficient to answer.

Plaintiff's failure to comply with Rule 8 alone justifies dismissal of her complaint. <u>See</u> <u>Schmidt v. Hermann</u>, 614 F.2d 1221, 1223 (9th Cir. 1980) (upholding the dismissal of a complaint where it was "impossible to designate the cause of action or causes of action attempted to be alleged in the complaint."); <u>In re Sagent Tech., Inc.</u>, 278 F.Supp.2d 1079, 1094 (N.D. Cal. 2003) ("[T]he complaint fails to state a claim because plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act."); <u>see also</u> <u>McHenry v. Renne</u>, 84 F.3d 1172, 1177-78 (9th Cir. 1996) (affirming Rule 8 dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant" and providing an example of a properly pleaded claim, which could be "read in seconds and answered in minutes").

/ / /

/ / /

/ / /

/ / /

1    Though dismissal without leave to amend would be appropriate, because the

2  current pleading before the Court is Plaintiff's original complaint, and because Plaintiff is

3  proceeding pro se, the Court will recommend dismissal with leave to amend consistent with the

4  foregoing with respect to Rule 8 and with the following as to specific claims which can currently

5  be gleaned from the complaint.[12]

6    **B.    Specific Claims**

7    Based on the description of Plaintiff's various "Counts," the Court offers Plaintiff

8  the following guidance in preparing her amended complaint.  Specifically, the Court identifies the

9  following categories of claims subject to potential amendment: due process claims; equal

10  protection claims; retaliation claims; Brown Act claims; negligence claims; and nuisance claims.

11  Additionally, the Court identifies the following categories of claims which are not subject to

12  amendment, and which should be dismissed with prejudice: right to vote claims; federal Clean

13  Water Act claim; Fourth Amendment claims; and emotional distress claims.  To the extent

14  Plaintiff intends to assert other claims, they are not readily apparent due to failure to comply with

15  Rule 8 as discussed above.

16    1.    Due Process and Equal Protection

17    Plaintiff references violations of her due process and equal protection rights in

18  federal Counts II, V, VI, VII, and XI.

19    A claim for violation of procedural due process requires a showing that the

20  plaintiff was deprived of a protected liberty or property interest. See Knappenberger v. City of

21  Phoenix, 566 F.3d 936, 940 (9th Cir. 2009).  In order to state a claim of deprivation of due

22  process, a plaintiff must allege the existence of a liberty interest for which the protection is

23  sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564,

24  _____

25  [12]    Though Plaintiff is proceeding pro se, it is clear that Plaintiff is quite familiar with litigation in federal court.  It is also clear from the dockets in Plaintiff's various cases that Plaintiff has been advised on numerous occasions of the pleading requirements under Rule 8.

26  Therefore, the Court recommends that Plaintiff be provided this single opportunity to cure the defects in her pleading. This Court intends to effectively manage its docket, in the interests of

27  fairness to all parties, and this requires providing both appropriate guidance as well as limited leeway in allowing for protracted proceedings at the pleading stage where amendments do not

28  cure defects in prior pleadings.

569 (1972). Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995).

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Equal protection claims are not necessarily limited to racial and religious discrimination. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class) see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to a prisoner's equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made);Hightower v. Schwarzenegger, 2007 WL 732555 (E.D. Cal. March 19, 2008). Strict scrutiny applies to equal protection claims alleging race-based or religious discrimination (i.e., where the plaintiff is member of a "protected class"); minimal scrutiny applies to all other equal protection claims. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001).

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that the defendants acted with the intent to discriminate against the plaintiff. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

/ / /

/ / /

/ / /

27

In federal Count II, entitled "Deprivation of, Due Process, and Equal Protection of the Laws; Unlawful Seizure," Plaintiff alleges:

> 56.     In conspiring and acting as aforesaid to violate State law and the HCSD Bylaws, to censure, retaliate for, and suppress Plaintiff's protected speech (including via her exercise of the right to vote), and to retaliate against her for making it by denying Plaintiff her right to vote and due process provisions of the Bylaws to do so, and without any notice or opportunity to be heard concerning those deprivations, the HCSD and Board Defendants, with the agreement, assistance, and ratification of, Bowles, Dingman, Kampa, and Dixon, violated Plaintiff's right to the due process and equal protection of law [footnote with citation omitted], and a "seizure" of liberty interests to assertion of rights.

ECF No. 1, pg. 20.

In federal Count V, entitled "Deprivation of Rights to Due Process; Equal Protection," Plaintiff alleges:

> 59.     Plaintiff alleges that the Board Defendants, and HCSD, during times material to this Complaint, failed to act on, or respond in any way to Plaintiff's multiple requests to them for statutorily-mandated opportunity to vote on items of the HCSD relating to its ongoing operations, and as mandated by the HCSD Bylaws, and that the denial of the right to vote by the HCSD, and Board Defendants, while wrongfully allowing themselves full control over supposedly voter-controlled issues, without any notice or hearing to Plaintiff or the other electors of the District, deprived Plaintiff of her right to due process and equal protection of the laws insofar as other persons in other political subdivisions of the State re not subject to having their rights to vote usurped and/or denied, or Bylaws ignored, by their governmental representatives.

ECF No. 1, pg. 21.

In federal Count VI, entitled "Deprivation of Rights to the Equal Protection of the Laws, and to Due Process of Law," Plaintiff alleges:

> 60.     The HCSD, Board Defendants, Kampa, Dixon, and Dingman, did improperly and illegally conspire to, and actually did, wrongfully violate, and refuse to follow, the mandate of: the SDWA and CWA; State laws relating to drinking water facilities and operation thereof (including, but not limited to, the Health and Safety Code); and, the HCSD Bylaws, with the assistance, affirmation, and ratification of Defendant[] Bowles.  These Defendants did so in part by allowing Dingman to operate the water treatment and distribution facilities of the HCSD without State-required certifications; permitting Dingman (and his dog) to illegally and improperly [footnote omitted] occupy the water treatment plant of the HCSD and to use the electricity thereof for his personal use, without any compensation; acted with the aid, assistance and ratification of Dingman and Bowles, in also acting to wrongfully, improperly and illegally alter the

28

rates and fees of the HCSD; wrongfully failed to charge each commercial (of both tiers), governmental, and/or residential customers the proper rates, fees, and/or charges associated with each particular account; while further failing to comply with Water Cote sections 31007 and 71616, to benefit their friends and associates outside of public meetings, without voter approval, all in contradiction of the Bylaws and applicable State and Federal laws.  These same Defendants also failed to require that Dingman keep any proper log or other data concerning operation of the HCSD water production facilities as required by law and administrative rules – all while denying access to public records during normal business hours, and in contravention of the procedures and requirements of the HCSD Bylaws, and the CPRA.

ECF No. 1, pgs. 21-22.

In federal Count VII, entitled "Deprivation of Rights to Equal Protection of the Laws, to Due Process of Law; and Right to Vote," Plaintiff alleges:

61.    The Board Defendants and Bowles, by improperly and wrongfully altering rates and fees of the HCSD to benefit their friends without voter approval [footnote omitted]; permitting operation of HCSD water facilities by Dingman as an uncertified operator in violation of the Safe Drinking Water Act and Clean Water Act; failing to charge each commercial, governmental, and/or residential customer proper rates, fees, and/or charges; treating Plaintiff differently than other residential customers concerning notices and informational inserts; not complying with Water Code sections 31007 and 71616; all in contradiction of the Bylaws and State laws, also deprived Plaintiff of the equal protection of the laws, and Plaintiff's rights to the due process of the law insofar as she, as an elector of the District, was denied the right and opportunity to vote on each and every of those fee reductions, and without due process of law regarding the deprivation of the right to vote.

ECF No. 1, pg. 22.

In federal Count XI, entitled "Deprivations of Right to Due Process, and Equal Protection of the Laws – Illegal Modification/Ignoring of the HCSD Bylaws," Plaintiff alleges:

67.    At all times material, the Board Defendants, wrongfully, in violation of State law and HCSD Bylaws, acted to ignore provisions of, and countermand, the Bylaws of the HCSD.
68.    By so doing, and particularly in secret prior to, and then later at, various improperly-held meetings in furtherance of the conspiracy to wrongfully divest the Public, and Plaintiff, of rights under the Bylaws [footnote omitted], these Defendants acted to deprive Plaintiff of her rights to the equal protection of the laws prohibiting such conduct, and due process of law, and to vote on such issues as set forth in the Bylaws.  The act by these Defendants were arbitrary, irrational, capricious, undertaken by them for an improper purpose, and were *ultra vires* and void.

ECF No. 1, pg. 24.

29

Here, the Court finds Plaintiff's allegations insufficient to establish the elements of a § 1983 civil rights claim based on violation of either due process or equal protection.  Largely, the deficiencies are symptoms of Plaintiff's failure to comply with Rule 8 by providing specific allegations as to specific defendants which show that each of the prima facie elements of the claim are satisfied.  As to due process, Plaintiff has not clearly alleged what liberty or property interests were deprived.  As to the equal protection component of her federal claims, it is unclear that Plaintiff has alleged any intent to discriminate against Plaintiff.  Nor is it clear that Plaintiff is a member of any protected class, or even a class of one.  And Plaintiff's complaint does not make clear whether she was treated differently than others who were similarly situated due to her status as a member of any protected class.  To the contrary, the gravamen of many of Plaintiff's claims appears to be that Defendants' alleged conduct harmed her in equal stead with members of the community at large.  In other words, Plaintiff's current allegations indicate that she was treated the same as everyone else with respect to many of the various violations asserted.

Because this action is proceeding on the original pro se complaint, and mindful that Plaintiff has alleged ADA violations based on disability, the Court will recommend that Plaintiff be provided at least one opportunity to cure the defects identified herein.

2.     Retaliation

In federal Count VIII, Plaintiff very generally and broadly references retaliation for exercise of constitutional rights.

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the plaintiff must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate government purpose. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the plaintiff must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The plaintiff must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir.

2005). Thus, the plaintiff must establish the following in order to state a claim for retaliation: (1) the defendant took adverse action; (2) the adverse action was taken because the plaintiff engaged in protected conduct; (3) the adverse action chilled the plaintiff's First Amendment rights; and (4) the adverse action did not serve a legitimate purpose. See Rhodes, 408 F.3d at 568.

In federal Count VIII, entitled "Unlawful Retaliation for Exercise of Constitutional Rights," Plaintiff alleges:

> 62.     Plaintiff's complaints, assistance to other making complaints, and testimony to the HCSD, courts, and State and Federal enforcement agencies of violations of the SDWA, CRA, and wrongful suppression of Plaintiff and the public's right to vote by the HCSD, Board Defendants, Kampa, Dingman, and Dixon, entitle her to protection from retaliation from them, including by denial of: services, right to vote, statutory rights, or discriminatory billing.
> 63.     The HCSD, by and with the Board Defendants, undertook the wrongful acts herein in part to retaliate against Plaintiff for her exercise of First Amendment rights by wrongfully using their official positions to eliminate Plaintiff's ability to assemble, petition, and speak at public meetings, and to vote – all as provided by law, and without any due process of law.
> 64.     These Defendants acted to deny Plaintiff proper, timely, statutory-required notice or opportunity to assemble, attend, and be heard concerning all HCSD meetings and business; to inspect public records; and, her right to vote on those matters as specified in the Bylaws, with the aid, ratification, and agreement of Kampa, Dingman, Bowles, and Dixon.

ECF No. 1, pgs. 22-23.

Here, it is unclear precisely how Plaintiff experienced retaliation, or by whom.  It is also unclear whether Plaintiff's rights were chilled, or that the conduct about which Plaintiff complains did not serve a legitimate government purpose.  As in Olson v. Slote, et al.,, Plaintiff's claims are replete with conclusory legal statements relating to the elements of a retaliation claim, but are short on specifics.  Again, the Court recommends Plaintiff be provided an opportunity to amend consistent with the pleading standards of Rule 8 and the elements for a retaliation claim outlined above.

/ / /

/ / /

/ / /

/ / /

31

1

                    3.      Brown Act

2       Plaintiff references the Brown Act in state Count III.

3               The Brown Act mandates that most local agency meetings must be open to the

4   public. Cal. Govt Code § 54953; Fowler v. City of Lafayette, 46 Cal. App. 5th 360, 366 (2020).

5   The act safeguards the public's right to attend public agencies' meetings and curbs abuse of the

6   democratic process through covert legislation. See Fowler, 46 Cal. App. 5th at 366. Among other

7   things, the act requires public posting of agendas seventy-two hours prior to a meeting and

8   proscribes consideration of items not on that agenda. Cal. Govt Code § 54954.2(a)(1), (3);

9   Fowler, 46 Cal. App. 5th at 366.  To state a claim, plaintiffs must allege: (1) that a local agency's

10  legislative body violated an enumerated Brown Act provision; (2) that the body took some action

11  in connection with the violation; and (3) that before commencing a lawsuit, the plaintiff timely

12  demanded that the legislative body cure or correct the allegedly violative action, and the

13  legislative body did not cure or correct the challenged action. See Julian Volunteer Fire. Co.

14  Ass'n. v. Julian-Cuyamaca Fire Prot. Dist., 62 Cal. App. 5th 583, 601 (2021).

15              In state Court III, entitled "Brown Act Violation; Gift of Public Funds," Plaintiff

16  alleges:

17                   75.     The actions of the HCSD and Board Defendants at the
            meeting of June 12, 2019, where they acted on an unagendized item of
18          business in an improperly closed session (relating to the indemnification
            and defense of Kenneth King), was illegal and void.  Any expenditures by
19          the HCSD associated with this void act are also a gift, and waste, of public
            funds.
20
            ECF No. 1, pg. 26.
21

22              In this case, Plaintiff has not alleged facts establishing all of the required elements

23  of a Brown Act claim.  One example suffices: Plaintiff does not allege that she timely demanded

24  that the HCSD cure or correct alleged violations, or that the agency did not do so after such

25  demand.  Nor does Plaintiff allege specifically what the "unagendized item" was, why it was not

26  appropriate for consideration in closed session, or why it was illegal.  The Court and Defendants

27  are left to guess as to what facts form the precise contours of Plaintiff's Brown Act claim.

28  / / /

                                        32

1    If facts exist to support the claim, the Court recommend Plaintiff be provided an

2   opportunity to amend.   This recommendation, however, is not without limitation and Plaintiff

3   will be expected to make progress in any amended pleading toward stating a cognizable claim

4   which provided fair notice to defendants, as well as the Court.  Any amended complaint will need

5   to be specific and precise, as to each named defendants, as to how the Brown Act was violated in

6   the context of the June 12, 2019, HCSD board meeting.

7          4.    Negligence

8    Plaintiff references negligence in state Counts II and XIII.

9    A negligence action under California law consists of four elements: (1) duty; (2)

10   breach; (3) causation; (4) and damages. See Mayall v. USA Water Polo, Inc., 909 F.3d 1055,

11   1060 (9th Cir. 2018); A.B. Concrete Coating, Inc. v. Wells Fargo Bank Nat'l Assoc., 491 F.

12   Supp. 3d 727, 738 (E.D. Cal. 2020); Peredia v. HR Mobile Servs., Inc., 25 Cal. App. 5th 680, 687

13   (2018). In other words, plaintiffs in negligence suits must establish a duty to use care, breach of

14   that duty, and the breach's proximate causation of a resulting injury. Vasilenko v. Grace Family

15   Church, 3 Cal. 5th 1077, 1083 (2017).

16    In state Count II, entitled simply "Negligence," Plaintiff alleges:

17          74.    In performing the acts complained of herein in the
      section(s) devoted to each particular Defendants, and in the "general"
18    paragraphs, each and all of the Defendants acted negligently, recklessly,
      and with wanton indifference and disregard for any possible harm that
19    may have befallen the HCSD, the Public, and/or Plaintiff as a result of
      their failures to abide by the Constitution and laws of the United States,
20    the State of California, and the Bylaws of the HCSD. . . .

21    ECF No. 1, pg. 25.

22    In this case, again because Plaintiff has not complied with Rule 8, it is unclear

23   which duties Plaintiff alleges she was owed, who breached such duties, how such breach caused

24   damages, and what specific damages Plaintiff allegedly sustained.  Similar to Plaintiff's

25   complaint in Olson v. Slote, et al., discussed above, Plaintiff's negligence allegations largely

26   consist of legal jargon unconnected to actual facts and appear to be an attempt to include the

27   kitchen sink.  As with many of Plaintiff's allegations, her negligence claim is prolix.

28   / / /

It is not completely clear that Plaintiff would not be able to cure these defects by amending her complaint.  Plaintiff should, therefore, be provided an opportunity to amend, if she can, to allege facts establishing the four discreet elements of a negligence claim under California law and to allege which defendant or defendants against whom such claim is asserted.

5.     Nuisance

Plaintiff alleges nuisances in state Counts X and XVI.

The doctrine of public nuisance protects community interests.  See Citizens for Odor Nuisance Abatement v. City of San Diego, 8 Cal. App. 5th 350, 358 (2017). A public nuisance interferes with the rights of the community at large. See Cal. Civ. Code § 3480; People ex rel. Gallo v. Acuna, 14 Cal. 4th 1090, 1103–05 (1997); Citizens, 8 Cal. App. 5th at 358. California defines a public nuisance as "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Cal. Civ. Code § 3480. Early common law categories of public nuisance, codified in 1872, remain applicable.  See Acuna, 14 Cal. 4th at 1104; Citizens, 8 Cal. App. 5th at 358. A public nuisance at common law is an interference with rights common to the public, like health, safety, and convenience. See Acuna, 14 Cal. 4th at 1103–04; Citizens, 8 Cal. App. 5th at 358. Public nuisance requires a showing that the alleged interference is both unreasonable and substantial. San Diego Unified Port Dist. v. Monsanto Co., 445 F. Supp. 3d 1098, 1106 (S.D. Cal. 2020); Acuna, 14 Cal. 4th at 1105.

California also recognizes nuisance *per se*. City of Monterey v. Carrnshimba, 215 Cal. App. 4th 1068, 1086 (Cal. Ct. App. 2013). A nuisance *per se* arises when a legislative body with lawful jurisdiction, in the exercise of police power, expressly and legislatively declares a particular substance, object, activity, or other circumstance to be a nuisance. See id.; City of Claremont v. Kruse, 177 Cal. App. 4th 1153, 1163 (2009). Cities are constitutionally authorized to pass local, sanitary, police, and other ordinances. Carrnshimba, 215 Cal. App. 4th at 1086. Cities may, by ordinance, declare what conditions constitute a nuisance. Id.; see Cal. Govt. Code § 38771. Because some applicable law must declare a condition to be a nuisance, the only issues for courts' resolution in nuisance *per se* proceedings are whether the statutory nuisance occurred,

34

1    and whether the statute is constitutional. <u>Carrnshimba</u>, 215 Cal. App. 4th at 1086–87.

2          In state Count X, entitled "Nuisance, by HCSD, Board Defendants, Dingman, and

3    Dixon," Plaintiff alleges:

4              85.    The HCSD, Board Defendants, Kampa, Dingman, and
         Dixon acted negligently, recklessly, wantonly, and/or willfully to violate
5        the Safe Drinking Water Act, the California <u>Health and Safety Code</u>, and
         the HCSD Bylaws, in their administration of the HCSD, and the operation
6        of the HCSD water production, treatment, and/or distribution facilities,
         and thereby created, assisted in creating, and/or ratified the acts of each
7        other in creating, annoying and/or unsafe conditions relating to the proper
         and lawful operation of the HCSD water facilities, and distribution of
8        water to the public and to Plaintiff, and which wrongly-produced water
         was offensive to the senses, and actually caused physical harm to plaintiff,
9        and her property.

10         ECF No. 1, pg. 28.

11         As with all of Plaintiff's claims, her failure to comply with Rule 8's pleading

12   requirements makes it impossible for the Court – let alone any of the named defendants – to

13   ascertain whether the elements of a public nuisance or nuisance *per se* have been pleaded and, if

14   so, against which defendants.  The Court will recommend that Plaintiff be granted leave to amend

15   as to her allegations of nuisance.

16             6.    <u>Right to Vote</u>

17         In federal Count III, entitled "Conspiracy for Deprivation of Right to Vote: (42

18   U.S.C. 1983)," Plaintiff alleges, again in very general terms, a conspiracy to deprive her of the

19   right to vote.[13]  According to Plaintiff:

20             57.    Plaintiff alleges that the Board Defendants, HCSD, and
         Kampa, during times material to this Complaint, affirmatively agreed and
21       acted several times to thwart Plaintiff's right to vote by: failing to abide by
         the requirements of the Brown Act concerning notice to her of meetings
22       and public business of the HCSD regarding those items of business
         triggering a required vote by the electors of the District; and, by failing to
23       abide by the HCSD Bylaws relating to the powers and duties of Plaintiff
         and other electors to vote on certain actions, policies, and procedures of
24       the District – instead undertaking such actions and policies in direct
         contradiction with those provisions without any due process.  Further,
25       these same Defendants acted to deny and interfere with Plaintiff's rights as

26   _____

27         [13]    Plaintiff also references her right to vote in many of her other claims for relief,
     specifically those alleging due process and equal protection violations.  It appears Plaintiff
28   believes that every due process violation also constitutes a violation of her rights to equal
     protection and to vote.

a citizen of the HCSD to vote on various matters as provided by the HCSD Bylaws by forming an agreement, and acting, to wrongfully alter, erase, and/or evade the voting requirements thereof.  Finally, these Defendants willfully failed and refused to call for elections of the HCSD Board in 2019 as required by the Elections Code so that they might remain unchallenged and in office – all to prevent Plaintiff, and other electors, from voting against these Defendants, or running for the Board Defendants' seats.

ECF No .1, pgs. 20-21.

All of Plaintiff's claims and sub-claims alleging denial of the right to vote fail as a matter of law.  Under the Voting Rights Act of 1965, a plaintiff must allege invidious discrimination.  See Mobile v. Bolden, 446 U.S. 55 (1980).  Plaintiff has not done so here, nor does she include any allegations to suggest she might be able to do so if granted leave to amend.  Plaintiff's allegations make clear that Plaintiff believes Defendants have acted in furtherance of some sort of personal vendetta against her.  At worst, this is personal, not invidious, conduct directed towards Plaintiff.  Plaintiff's complaint contains no allegations of invidious discrimination based on, for example, race, gender, gender identity, sexual orientation, or religious belief.

Though Plaintiff indicates in her complaint that she is disabled, Plaintiff does not allege that Defendants' conduct was influenced by a desire to discriminate against her because she is disabled.  Plaintiff has not otherwise explained anywhere in the complaint how her disability relates to any of her claims for relief.[14]

Plaintiff's claims based on denial of the right to vote, federal Count III in particular, should be dismissed with prejudice.

/ / /

/ / /

/ / /

/ / /

---

[14]     This is a reflection of Plaintiff's failure to comply with Rule 8 in that Plaintiff's claims relating to disability and the ADA, if any are actually intended, are entirely unclear.  They are, at best, conclusory and do not put any particular named defendants on fair notice of the basis of Plaintiff's contentions relating to disability.

36

1

       7.     Clean Water Act Claim

2

       In federal Count IV, Plaintiff alleges violation of the Clean Water Act.  Plaintiff

3

cannot sustain a claim under this statute because she has not alleged an injury in fact.  See

4

Whitmore v. Arkansas, 495 U.S. 149, 155 (1990); see also Friends of the Earth, Inc. v. Laidlaw

5

Env't Servs., Inc., 528 U.S. 167, 180-81 (2000).  This claim should be dismissed with prejudice.

6

Accord Gifford v. Kampa, et al., No. 2:17-CV-2421-TLN-DMC, ECF No. 82 (District Judge

7

order adopting findings and recommendations in full and dismissing claims under the CWA and

8

SDWA).[15]

9

       8.     Fourth Amendment

10

       In federal Count II, Plaintiff references an improper "seizure."  In federal Count

11

XII, Plaintiff cites the Fourth Amendment.  Because Plaintiff is not alleging something akin to an

12

unreasonable search and seizure in the context of a criminal investigation and resulting

13

prosecution, the Fourth Amendment is inapplicable, and these claims should be dismissed with

14

prejudice. See Carpenter v. United States, 138 S. Ct. 2206, 2213–14 (2018) (discussing the Fourth

15

Amendment's purpose).

16

       9.     Emotional Distress

17

       In state Count XV, Plaintiff alleges both intentional and negligent infliction of

18

emotional distress.  According to Plaintiff:

19

20

21

22

23

24

      90.    Plaintiff alleges that the Board Defendants, as well as Defendants Kampa, Bowles, Dixon, and Dingman, in performing the acts complained of herein as to any particular one of them, or identified group of them, did so while acting negligently, recklessly, wantonly, and/or willfully to vex, harass, oppress, and annoy Plaintiff, and/or to subject her to lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, financial loss, and extreme ongoing emotional and psychological pain and distress, all the while acting with wanton indifference and reckless disregard for any possible harm that may have befallen Plaintiff as a result.

25

      ECF No. 1, pg. 29.

26

/ / /

27

28

    [15]   Gifford v. Kampa, et al., as outlined above, is markedly similar to the instant action filed by Olson.  Again, the Court observes the striking intersection among the various Olson and Gifford actions alleging mismanagement of the HCSD.

1

a.      Intentional Infliction of Emotional Distress

2          A cause of action for intentional infliction of emotional distress requires a showing

3  of "extreme and outrageous conduct by the defendant." Hughes v. Pair, 46 Cal.4th 1035, 1050-

4  1051 (2009). "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all

5  bounds of that usually tolerated in a civilized community.'" Id.   In California, there are three

6  elements required to establish a prima facie case of intentional infliction of emotional distress:

7  (1) extreme and outrageous conduct by a defendant with the intention of causing, or reckless

8  disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or

9  extreme emotional distress; and (3) actual and proximate causation of the emotional distress by

10  the defendant's outrageous conduct. See Doe v. Gangland Prods., Inc., 730 F.3d 946, 960 (9th

11  Cir. 2013); Wynes v. Kaiser Permanent Hosps., 936 F. Supp. 2d 1171, 1194 (E.D. Cal. 2013);

12  Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009).

13          There is no bright-line standard of outrageous conduct, which instead entails an

14  intuitive, case-specific approach. See So v. Shin, 212 Cal. App. 4th 652, 671 (2013). Still,

15  liability for intentional infliction of emotional distress does not extend to mere threats, insults,

16  annoyances, indignities, petty oppressions, or other trivialities. Hughes, 46 Cal. 4th at 1051. It is

17  insufficient that a defendant acted with tortious or even criminal intent, or intended to inflict

18  emotional distress, even if the defendant's conduct reflects malice or aggravation supporting

19  punitive damages for another tort. Pardi v. Kaiser Found. Hosps., 389 F.3d 840, 852 (9th Cir.

20  2004); Jackson v. Mayweather, 10 Cal. App. 5th 1240, 1266 (2017). A defendant's conduct must

21  be so outrageous in character and extreme in degree that it goes beyond all decency and exceeds

22  the bounds of behavior tolerated in a civilized community. Hughes, 46 Cal. 4th at 1050–51.

23          The defendant's conduct must be purposeful, with the intention and realization that

24  injury will result. Hughes, 46 Cal. 4th at 1051. The conduct must be directed at a plaintiff or done

25  in the presence of a plaintiff whose presence the defendant is aware of. Christensen v. Superior

26  Court, 54 Cal. 3d 868, 903 (1991); McMahon v. Craig, 176 Cal. App. 4th 1502, 1516 (2009).

27  Malicious purpose, however, is not required. Crouch, 39 Cal. App. 5th at 1007.

28  / / /

38

Here, Plaintiff has not alleged facts to show the kind of outrageous conduct required to sustain a claim for intentional infliction of emotional distress.  Nor has Plaintiff alleged that she actually suffered extreme emotional distress.  This claim should be dismissed with prejudice.

            b.      Negligent Infliction of Emotional Distress

The California Supreme Court has allowed plaintiffs to bring negligent infliction of emotional distress actions as "direct victims" in only three types of factual situations: (1) the negligent mishandling of corpses (Christensen v. Superior Court, 54 Cal.3d 868, 879 (1991)); (2) the negligent misdiagnosis of a disease that could potentially harm another (Molien v. Kaiser Foundation Hospitals, 27 Cal.3d 916, 923 (1980)); and (3) the negligent breach of a duty arising out of a preexisting relationship (Burgess v. Superior Court, 2 Cal.4th 1064, 1076 (1992)).

Plaintiff has not alleged mishandling of a corpse, misdiagnosis of a disease, or breach of a duty arising out any preexisting relationship.  Therefore, Plaintiff's negligent infliction of emotional distress claim should be dismissed with prejudice as a matter of state law.

# IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.      Defendant's Kampa's motion to dismiss, ECF No. 10, which the other defendants join, be granted;

2.      Plaintiff's complaint be dismissed with leave to amend for failure to comply with Federal Rule of Civil Procedure 8;

3.      The following claims be dismissed without leave to amend and with prejudice;

        a.      Plaintiff's right-to-vote claim in federal Count III and elsewhere as sub-claims to Plaintiff's other federal counts.

        b.      Plaintiff's Clean Water Act claim in federal Count IV.

        c.      Plaintiff's Fourth Amendment claims in federal Counts II and XII.

        d.      Plaintiff's infliction of emotional distress claims in state Count XV.

1          4.      Plaintiff be directed to file a first amended complaint.

2          5.      A related-case order issue pursuant to Local Rule 123(a) relating <u>Olson v.</u>

3   <u>Slote, et al.</u>, case no. 2:16-CV-0965-KJM-EFB, to the instant action and <u>Olson v. Hornbrook</u>

4   <u>Community Services District, et al.</u>, case no. 2:15-CV-0646-KJM-DMC.

5          These findings and recommendations are submitted to the United States District

6   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

7   after being served with these findings and recommendations, any party may file written objections

8   with the Court.  Responses to objections shall be filed within 14 days after service of objections.

9   Failure to file objections within the specified time may waive the right to appeal.  <u>See</u> <u>Martinez v.</u>

10  <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

11  Dated:  August 30, 2022

12                                          _____
                                            DENNIS M. COTA
13                                          UNITED STATES MAGISTRATE JUDGE

40