1
2
3
4
5
6
7
8                **IN THE UNITED STATES DISTRICT COURT**

9                **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    KIMBERLY R. OLSON,                          No.  2:19-CV-2127-DC-DMC

12                  Plaintiff,

13         v.                                      ORDER

14    HORNBROOK COMMUNITY
      SERVICES DISTRICT, et al.,                   and

15                                                 AMENDED FINDINGS AND
                  Defendants.                      RECOMMENDATIONS
16

17

18                Plaintiff, who is proceeding pro se, brings this civil action.  Pending before the

19    Court is Defendants' motion to dismiss.  See ECF No. 51. Plaintiff has filed an opposition.  See

20    ECF No. 56.  Defendants have not filed a reply.  The Court issued findings and recommendations

21    recommending the motion to dismiss be granted on March 29, 2024. See ECF No. 57. After

22    seeking an extension of time, Plaintiff filed objections to those findings and recommendations on

23    September 12, 2024. See ECF No. 63.  In light of Plaintiff's objections, the Court will vacate the

24    March 29, 2024, findings and recommendations and issue these amended findings and

25    recommendations.

26                In considering a motion to dismiss, the Court must accept all allegations of

27    material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

28    Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

1

1  v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

2  738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

3  ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen,

4  395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

5  factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

6  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

7  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

8            In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials

9  outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

10  Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1)

11  documents whose contents are alleged in or attached to the complaint and whose authenticity no

12  party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

13  and upon which the complaint necessarily relies, but which are not attached to the complaint, see

14  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

15  of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

16  1994).

17

18                              **I. BACKGROUND**

19        **A.**    **Procedural History**

20            On August 30, 2022, the Court issued findings and recommendations addressing

21  Defendants' motion to dismiss Plaintiff's original complaint.  See ECF No. 36.  The Court

22  recommended that Plaintiff's complaint be dismissed for failure to comply with Federal Rule of

23  Civil Procedure 8.  See id.  The Court also recommended that the following specific claims be

24  dismissed with prejudice: (1) Plaintiff's right-to-vote claim in federal Count III and elsewhere as

25  sub-claims to Plaintiff's other federal counts; (2) Plaintiff's Clean Water Act claim in federal

26  Count IV; (3) Plaintiff's Fourth Amendment claims in federal Counts II and XII; and (4)

27  Plaintiff's infliction of emotional distress claims in state Count XV.  See id.

28  / / /

1    The District Judge adopted the findings and recommendations in part on March 31,

2  2023.  See ECF No. 46.  Specifically, the District Judge did not agree that any portion of the

3  original complaint should be dismissed with prejudice pursuant to Rule 8.  See id.  While the

4  District Judge agreed that Plaintiff's original complaint failed to satisfy Rule 8, the District Judge

5  found that leave to amend was appropriate.  See id.  The District Judge did not comment on the

6  remainder of the findings and recommendations, which were adopted.

7    In granting Defendants' motion to dismiss but allowing Plaintiff leave to amend,

8  the District Judge stated as follows with respect to Rule 8:

9    The court finds plaintiff has not met the requirements of Rule 8.
   Plaintiff's complaint is filled with confusing and conclusory allegations
10    that make it difficult for the court to decipher the complaint. *Cf. Blaylock
   v. United States*, No. 17-00006, 2017 WL 2196765, at *1 (D. Ariz. Apr.
11    12, 2017), *report and recommendation adopted*, No. 17-00006, 2017 WL
   2172002 (D. Ariz. May 17, 2017) ("[T]he Court is not to serve as an
12    advocate of a *pro se* litigant in attempting to decipher a complaint."). In
   her objections to the Magistrate Judge's findings and recommendations,
13    plaintiff acknowledges her complaint "needs to be re-written" and could
   use clarification, consolidation and "elimination of duplicative claims."
14    Objs. at 1, 7 n.20, ECF No. 43. Thus, dismissal is proper.
      However, "[a] district court should not dismiss a pro se complaint
15    without leave to amend unless 'it is absolutely clear that the deficiencies
   of the complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698
16    F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d
   1202, 1203–04 (9th Cir.1988)). In light of plaintiff's objections, the court
17    is unable to conclude the complaint cannot be cured by any amendment.
   However, the court takes judicial notice of plaintiff's litigation history and
18    finds this is one of many cases plaintiff has filed in this District. *See
   Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012)
19    ("[Courts] may take judicial notice of undisputed matters of public record .
   . . including documents on file in federal or state courts."). Plaintiff's
20    complaints in other cases have been dismissed for failure to comply with
   Rule 8. *See, e.g.*, Order, *Olson v. Hornbrook Community Services*, No. 15-
21    646 (May 17, 2017), ECF No. 9; Order, *Olson v. Slote*, No. 16-956 (Oct.
   30, 2022), ECF No. 15. Plaintiff is warned that failure to comply with
22    Rule 8 in any amended complaint will likely result in dismissal with
   prejudice. *See Remington v. Mathson*, 804 F. App'x 783, 784 (9th Cir.
23    2020) (unpublished) (affirming dismissal of action with prejudice for
   failure to comply with Rule 8 where plaintiff had opportunity to amend);
24    *see also* E.D. Cal. L.R. 110.

25    ECF No. 46, pgs. 2-3.

26    Plaintiff timely filed her first amended complaint on June 27, 2023.  See ECF No.

27  50.  Defendants filed the currently pending motion to dismiss on July 10, 2023.  See ECF No. 51.

28  / / /

3

1

**B.** **Summary of Plaintiff's Allegations**

2          Plaintiff names the following as defendants: (1) Hornbrook Community Services

3   District (HCSD); (2) Clint Dingman; (3) Robert Puckett, Sr.; (4) Michele Hanson; (5) Melissa

4   Tuledo; (6) Peter Kampa; and (7) Julie Bowles.  See ECF No. 50, pg. 1.

5          Plaintiff's outlines general allegations in Sections I through V of the first amended

6   complaint.  See id. at 1-12.  In Section I of the first amended complaint, Plaintiff outlines her

7   allegations relating to the Court's jurisdiction, which is not in dispute.  See id. at 1-2.  In Section

8   II, Plaintiff describes Defendant HCSD.  See id. at 2-3.  In Section III, Plaintiff describes herself

9   as a taxpayer, elector, property owner, and resident.  See id. at 3-5.  In Section IV, Plaintiff

10  describes the named defendants.  See id. at 5-9.  At Section V, Plaintiff outlines what she alleges

11  to be the legal duties of the named defendants under state and federal water laws.  See id. at 9-12.

12         Plaintiff's more specific allegations of wrongdoing begin with Section VI.  In

13  Section VI, Plaintiff alleges that Defendants HCSD, Hanson, Puckett, Tuledo, and Kampa failed

14  to follow applicable federal and state water laws and illegally contracted with Defendant

15  Dingman to provide non-compliant water treatment and distribution services.  See id. at 12-16.  In

16  Section VII, Plaintiff claims that Defendants HCSD, Hanson, Puckett, Tuledo, and Kampa

17  illegally allowed Defendant Dingman to use HCSD water treatment facilities as a trailer park,

18  junkyard, and residence, constituting a waste of public funds in violation of state law.  See id. at

19  16-18.  In Section VIII, Plaintiff generally alleges that the voter-control provisions of the HCSD

20  bylaws grant "substantial rights."  Id. at 18-20.

21         Returning to more specific allegations, Plaintiff claims in Section IX that

22  Defendants Hanson, Puckett, and Tuledo, as members of the Board of Directors of Defendant

23  HCSD, imposed water rate charges in violation of HCSD bylaws.  See id. at 20-23.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

Based on these allegations, Plaintiff asserts five[1] federal claims as follows:

| Count I | Denial of Rights to Vote, Due Process, Petition, Association, and Free Speech as to Rate Increases. |
|---|---|
| Count II(a) | Denial of Rights to Vote and Due Process as to Fees. |
| Count II(b) | Violation of Clean Water Act. |
| Count III | Violation of the Safe Drinking Water Act. |
| Count IV | Violation of the Americans with Disabilities Act. |

ECF No. 50, pgs. 23-27.

Plaintiff also asserts state claims as follows:[2]

| Count I | Diversion of, and Gifts of, Public Funds as to Michelle Hanson |
|---|---|
| Count II | Gifts, and Waste of, Public Funds as to John Does |
| Count III | Failure to Impose, Standby, Availability Fee; Fiduciary Duty |
| Count IV | Breach of Fiduciary Duty, HCSD Bylaws – General |
| Count V(a)[3] | Nuisance in Allowing Dingman to Treat and Distribute Water |
| Count V(b) | Negligence in Allowing Dingman to Treat and Distribute Water |
| Count VI | Brown Act Violation; Gift of Public Funds to Kenneth King |
| Count VII | Gifts of Public Funds and Fraud as to Dingman |
| Count VIII | CPRA Violations |
| Count IX | Gifts of Public Funds to Dingman; Unlawful Use of HCSD Facility |

See id. at 27-33.

/ / /

/ / /

---

[1]     The first amended complaint contains two federal claims listed as "Count II." They are designated here as Count II(a) and Count II(b).

[2]     The first amended complaint misnumbers the state claims, there is no Count IV and then after Count VI, the complaint goes back to Count V. For clarity, the Court has renumbered these counts in accordance with how Plaintiff listed them and will refer to the counts consistently as they are listed here, regardless of how Plaintiff or Defendants' number the counts in their filings.

[3]     As discussed in detail below, Plaintiff lists nuisance and negligence as one claim but asserts two distinct claims arising from the same set of facts. Thus, the Court will address each and designated them as Count V (a): Nuisance and Count V (b): Negligence.

1

**II. DISCUSSION**

2           In their motion to dismiss, Defendants renew their previous assertion and argue

3   that the action should now be dismissed in its entirely and with prejudice pursuant to Federal

4   Rules of Civil Procedure 41(b) and 12(b)(6) for Plaintiff's continued failure to state a claim for

5   relief. <u>See</u> ECF No. 51-1. As to all claims, Defendants argue they do not understand the specific

6   allegations Plaintiff is making because Plaintiff fails to plead facts linking the allegations to

7   specific actions taken by Defendants. <u>See id.</u> at 3-5. Defendants make additional arguments as to

8   specific claims, discussed in detail below.

9       **A.**    <u>**Federal Claims**</u>

10          1.      <u>Count I: Denial of Rights to Vote, Due Process, Petition, Association, and</u>

11                  <u>Free Speech as to Rate Increases.</u>

12          Plaintiff asserts that the HCSD bylaws "prohibit any increase in domestic,

13  residential water service without approval of voters in the District . . . [and] despite those

14  provisions, Defendants Puckett, Hanson, and Tulledo collaborated in mid-2018 to raise rates of

15  the HCSD to $54.80 per month as the base rate." ECF No. 50, pg. 20. In support, Plaintiff cites to

16  Section A-9 in the bylaws she filed with the Court, ECF No. 3.[4] Section A-9 (1) states "regardless

17  of any other provision of these Bylaws, the Board may act to increase minimum fees and base

18  gallonage for residential customers without voter approval, so long as the actual rate charged per

19  gallon of water remains constant, or decreases." ECF No. 3, pg. 11. Plaintiff also states, and

20  attaches documentation to show, that the water rate was $45.00 per month for 15,000 gallons of

21  water.[5] <u>See</u> ECF No. 50, pgs. 20 and 45. According to the bylaws Plaintiff provided, increasing

22  the base rate to $54.80 per month is permissible without voter approval, "so long as the actual rate

23  _____

24  [4]      Plaintiff's complaint relies on, references, and discusses HCSD bylaws, ECF No. 3, and
    Defendants raise no question about the authenticity of the documents. Thus, the Court will
25  consider ECF No. 3 in addressing the motion to dismiss. <u>See</u> <u>Branch</u>, 14 F.3d at 454; <u>see</u> <u>Lee v.</u>
    <u>City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001).
26  [5]      Plaintiff asserts that the water rate was changed from $39.00 to $54.80. <u>See</u> ECF No. 50,
    pg. 23. However, she previously stated in her complaint that the $39.00 base rate for 12,000
27  gallons of water was increased to $45.00 for 15,000 gallons "in compliance with the Bylaws."
    ECF No. 50, pg. 20. Thus, the Court believes that, at the time of the alleged base rate increase, the
28  base rate was, on Plaintiff's own admission, $45.00 for 15,000 gallons.

1    charged per gallon of water remains constant, or decreases." ECF No. 3, pg. 11. Thus, for

2    Plaintiff to allege that she was deprived the right to vote as established by these bylaws, she

3    would need to provide facts establishing that the rate charged per gallon did not remain constant

4    nor decrease. Plaintiff did not provide such information. See ECF No. 50.

5            Further, Plaintiff was on notice, from the Court's previous findings and

6    recommendations, that her deprivation of the right to vote claim "fail[s] as a matter of law"

7    because such a claim requires a showing of "invidious discrimination" and Plaintiff had not made

8    such a showing. See ECF No. 36, pg. 36 (citing Mobile v. Bolden, 446 U.S. 55 (1980)). Plaintiff

9    was provided the opportunity to amend her complaint, and she did not include any facts to show

10   invidious discrimination. Given Plaintiff did not provide facts showing that the rate charged per

11   gallon did not remain constant nor decrease and Plaintiff was provided the opportunity to amend

12   her complaint but Plaintiff failed to address the deficiencies identified, dismissal as to her right to

13   vote claim arising from the changed water rates is appropriate, without further leave to amend.

14           A claim for violation of procedural due process requires a showing that the

15   plaintiff was deprived of a protected liberty or property interest. See Knappenberger v. City of

16   Phoenix, 566 F.3d 936, 940 (9th Cir. 2009). In order to state a claim of deprivation of due

17   process, a plaintiff must allege the existence of a liberty interest for which the protection is

18   sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564,

19   569 (1972). Liberty interests can arise both from the Constitution and from state law. See Hewitt

20   v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v.

21   Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether state law confers a liberty

22   interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is

23   determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472,

24   481-84 (1995).

25           Plaintiff asserts that the water rate increase was done "in violation of the due

26   process rights of Plaintiff." ECF No. 50, pg. 23. Plaintiff argues that "the voter control provisions

27   of the HCSD bylaws grant 'substantial rights." Id. at 18. Thus, Plaintiff alleges her due process

28   rights were violated because she was deprived of her protected interest in voting for a raise in

7

1    water rates. The Court does not address whether the bylaws confer a constitutionally protected

2    interest because, as discussed above, Plaintiff fails to establish that she had a right to vote for such

3    a change. Thus, Plaintiff fails to make a due process claim arising from the water rate increases.

4    Given this, the Court will recommend that Defendants' motion to dismiss as to that claim is

5    granted and Plaintiff's federal Count I be dismissed.

6              2.    Count II (a): Denial of Rights to Vote and Due Process as to Fees

7              Plaintiff contends that Defendants HCSD, Hanson, Puckett, Tulledo, and Kampa

8    "failed to perform their ministerial and fiduciary duties to levy and collect the 'availability fee'

9    and the 'standby fee', as required by the HCSD Bylaws, and they did so without the voter

10   approval for such acts as required by the Bylaws; without notification to the electors of the

11   District (including Plaintiff) that they intended to do so; and, without opportunity for the electors

12   (including Plaintiff) to be heard as to those actions." ECF No. 50, pg. 24. Defendants make the

13   general argument that Plaintiff's right to vote claim does not state the "specific meeting or voting

14   issue" the claim arises from. ECF No. 51-1, pg. 4. The Court disagrees. Here, Plaintiff

15   specifically states that the issues are the availability and standby fees not being imposed from

16   December 1, 2017 through October 7, 2019. See ECF No. 50, pg. 24. Thus, Plaintiff addressed

17   the Rule 8 deficiencies previously identified by the Court as to her claim of the denial of her right

18   to vote on the issues of availability and standby fees.

19             Defendants also contend that Plaintiff asserts "an ambiguous interest in flawless

20   operation of a drinking water facility and perfectly even implementation of legal duties by public

21   officers," and thus, the due process claim lacks the "vested, specific property interest required to

22   state a claim for relief." ECF No. 51-1, pg. 6. The Court disagrees. Plaintiff clearly asserts her

23   protected interest is her right to vote on whether to waive standby and availability fees. Thus, the

24   undersigned will recommend the Defendants' motion to dismiss as to this count be denied and

25   this claim may proceed.

26   / / /

27   / / /

28   / / /

8

### 3. Count II (a): Violation of Clean Water Act

The Clean Water Act provides a cause of action for citizens to bring a private suit against alleged violators of the Act after specific notice is given to the alleged violator. See 33 U.S.C. § 1365(a), (b). In the Court's findings and recommendations, ECF No. 36, the Court found that Plaintiff failed to allege an injury in fact, and recommended the claim be dismissed with prejudice. See ECF No. 36, pg. 37 (citing Whitmore v. Arkansas, 495 U.S. 149, 155 (1990); Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc., 528 U.S. 167, 180-81 (2000)). The District Judge adopted those findings and recommendations in part, specifically providing Plaintiff leave to amend. See ECF No. 46. Plaintiff filed an amended complaint and added the following to her Clean Water Act Claim:

> Plaintiff has often suffered loss of enjoyment listening to spring frogs; and observation of bird species [footnote omitted] from her porch nearest to Rancheria Creek. Plaintiff has also suffered a loss of enjoyment and use of Cottonwood Creek due to a recurring 'dead spot' extending from the mouth of Rancheria Creek where it intersects Cottonwood Creek, and extending for 25-50 yards downstream on some years – which area coincides with the only available access for Plaintiff to Cottonwood creek due to her limited mobility, and which is where Plaintiff enjoys going in spring and summer months to observe wildlife, picnic, fish, and to 'cool off'; activities often negatively impacted or prohibited by the varying flow of 'well #3' due to dead/dying vegetation, fear of putting her feet into probably contaminated water, lack of dragonflies and other interesting insects, lack of fish, and less birds.

ECF No. 50, pg. 25.

Defendants argue in their motion to dismiss that Plaintiff still fails to allege a concrete injury and thus, the claim should be dismissed. See ECF No. 51-1, pgs. 6-7. The Court disagrees. The Supreme Court has held that "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 183 (2000) (quoting Sierra Club v. Morton, 405 U.S. 727, 735 (1972)). Accepting Plaintiff's allegations as true, the standard necessary at this stage of litigation, Plaintiff's amended complaint sufficiently alleges an injury in fact as to her Clean Water Act claim. Therefore, the undersigned will recommend that Defendants' motion to dismiss as to this claim be denied and this claim may proceed.

4.      Count III: Violation of the Safe Drinking Water Act

The Safe Drinking Water Act (SDWA) provides a private cause of action for citizens to bring a suit against alleged violators of the Act after specific notice is given to the alleged violator. See 42 U.S.C. § 300j-8. Plaintiff contends that "HCSD never responded in any way to Plaintiff's claims notice(s). Plaintiff also gave notice of all Federal and State statutory . . . violations alleged herein." ECF No. 50, pg. 5. At this stage of litigation, the Court finds that general assertion to be sufficient to show that Plaintiff provided the requisite notice of the alleged SDWA violations and thus, the undersigned will recommend that Defendants' motion to dismiss as to this claim be denied.

5.      Count IV: Violation of the Americans with Disabilities Act

Title II of the Americans with Disabilities Act ("ADA") provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

To establish a violation of Title II of the ADA, "a plaintiff must show: (1) he is a 'qualified individual with a disability;' (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." Weinreich v. Los Angeles Cty. Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997) (quoting § 12132).

Defendants contend that the complaint does not allege facts of any specific time Plaintiff was barred from participation due to "HCSD's failure to accommodate her unspecified disability" and Plaintiff's claim that meeting agenda should have been emailed to her does not include any "allegation regarding the consequences of this purported failure." ECF No. 51-1, pg. 7. As to Plaintiff's claim that she required the reasonable accommodation of email copies of meeting materials, the Court agrees the complaint is insufficient as pled. While Plaintiff does not have to allege any consequences beyond the exclusion from an activity, Plaintiff does not assert

10

1    that she was barred from meetings or any other activity because she did not have email copies of

2    the materials. See ECF No. 50, pg. 27. Plaintiff asserts that emailed materials would "facilitate

3    communication with Plaintiff, and allow her to access to, and ability to more fully participate in,

4    the programs and events of the HCSD." Id. Plaintiff does not claim she was excluded from

5    participation nor denied any benefits, nor does she explain how any specific Defendant's actions

6    resulted in such exclusion or denial. Her assertion that emailed materials would "allow her access

7    to . . . programs and events of the HCSD" is too vague as currently pled. Plaintiff was provided

8    the opportunity to amend her complaint to plead specific allegations as to specific defendants[6] as

9    to her ADA claim. See ECF No. 36, pg. 30. Given she was provided such opportunity, and the

10   complaint still does not meet Rule 8 standards, the undersigned will recommend dismissal

11   without leave to amend as to Plaintiff's ADA claim arising from HCSD's failure to provide

12   emailed materials.

13          Plaintiff also asserts an ADA claim arising from the "fail[ure] and refus[al] to

14   provide CPRA access to the HCSD's facilities for the purposes of physical inspection of original

15   water production, treatment, and other public records maintained there, during normal business

16   hours, and as was granted to non-disabled persons." ECF No. 50, pg. 27. Plaintiff sufficiently

17   provides facts alleging she was denied the benefit of CPRA access due to Defendants' failure to

18   accommodate her disability. Thus, the undersigned will recommend Defendants' motion to

19   dismiss as to this claim be denied and Plaintiff's ADA claim arising from her request for

20   reasonable accommodations to engage in CPRA access to facilities to proceed.

21          **B.    State Claims**

22          Generally, Defendants assert that Plaintiff fails to "articulate an actionable basis

23   for relief" in any of her state claims. See ECF No. 51-1, pg. 7. The Court will address whether

24   Plaintiff alleges a basis for relief for each claim below.

25   / / /

26   / / /

27   [6]    The Court notes now, and explained in the original findings and recommendations, ECF
     No. 36, that this requirement arises from Rule 8 and applies to all complaints. See Bell Atl. Corp

28   v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

11

Plaintiff seeks injunctive relief for state Counts One, Two, Three, and Seven under California Code of Civil Procedure §526(a).  See ECF No. 50, pgs. 27-33. California Code of Civil Procedure §526(a) provides taxpayers a cause of action to seek remedial injunctive relief, when "the expenditure of public funds which [the taxpayer] seeks to enjoin is illegal." Herzberg v. Cty. of Plumas, 133 Cal. App. 4th 1, 23-24 (2005). Plaintiff explicitly states that at the time these allegations arose, she was a taxpayer in Hornbrook, California. See id. at 3. Thus, Plaintiff has provided sufficient facts to establish her standing to bring a §526(a) claim. Defendants argue that these §526(a) claims "seek[] to act on a baseless proposition that any moneys spent by HCSD constitute an illegal gift of public funds unless they are spent exactly as Plaintiff desires." Id. at 8. The Court disagrees. Plaintiff asserts that each of these expenditures, discussed further below, are illegal because they are in violation of the governing bylaws or provided individuals indemnification without following the procedure to do so. See id. at 27-33.

          1.      Count I: Diversion of, and Gifts of, Public Funds as to Michelle Hanson

Plaintiff contends that from December 1, 2017, through October 7, 2019, Defendants HCSD, Puckett, Hanson, and Tulledo "diverted public monies from HCSD accounts to Michele Hanson via monthly payments towards her privately-incurred legal fees . . . absent any legitimate, rational public purpose. Hanson never requested indemnification for that case; no indemnification was ever agendized, discussed, and/or approved by the Board." ECF No. 50, pg. 27. Plaintiff alleges this constituted an illegal expenditure of public funds which could be remedied with §526(a) injunctive relief and therefore, the Court will recommend that Defendants' motion to dismiss as to this claim be denied.

          2.      Count II: Gifts, and Waste of, Public Funds as to John Does

According to Plaintiff, from December 1, 2017, through October 7, 2019, Defendants HCSD, Hanson, Puckett, Tulledo, Kampa, Dingman, and Bowles failed to collect fees and improperly reduced fees for John Does in violation of the governing bylaws. See id. at 28. Plaintiff alleges this constituted an illegal waste of public funds which could be remedied with §526(a) injunctive relief and therefore, the Court will recommend that Defendants' motion to dismiss as to this claim be denied.

3.      Count III: Failure to Impose, Standby, Availability Fee; Fiduciary Duty

According to Plaintiff, from December 1, 2017, through October 7, 2019, Defendants HCSD, Hanson, Puckett, Tulledo, Kampa, Dingman, and Bowles failed to collect availability fees and standby fees from residents in violation of the governing bylaws. See id. at 28. Plaintiff sufficiently alleges this constituted an illegal waste of public funds which could be remedied with §526(a) injunctive relief and therefore, the Court will recommend that Defendants' motion to dismiss as to this claim be denied.

4.      Count IV: Breach of Fiduciary Duty, HCSD Bylaws – General

Plaintiff asserts that from December 1, 2019, through October 7, 2019, Defendants Hanson, Puckett, Tulledo, and Bowles acted "in breach of the provisions of the HCSD Bylaws [footnote omitted], and in breach of their fiduciary duties to the District by: unlawfully reducing and waiving various fees and charges for certain customers . . ." ECF No. 50, pgs. 28-29. Defendants contend that Plaintiff does not, and cannot, "establish standing to sue on behalf of a public entity like HCSD" for Count IV.[7] ECF No. 51-1, pgs. 7-8.

A claim for breach of fiduciary duty requires (1) the existence of a fiduciary relationship, which is a question of law, (2) breach of such relationship, and (3) damage caused by that breach. Green Valley Landowners Ass'n v. City of Vallejo, 241 Cal. App. 4th 425, 441-42 (2015). There is no common law government tort liability and therefore, a statute must establish the existence of a fiduciary duty. See id. California law explicitly states that "a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person" unless such liability is established by statute. Cal. Gov't Code § 815; see Green Valley Landowners Ass'n v. City of Vallejo, 241 Cal. App. 4th 425, 441-42 (2015). Plaintiff asserts that the fiduciary duty arises from a number of Water Code statutes, the California Constitution, and Section A-9 (1) of the HCSD bylaws, ECF No. 3. See ECF No. 50, pg. 10. The Court does not address whether the Water Code statutes and California

---

[7]      As previously noted, Plaintiff misnumbers the state counts in her first amended complaint. For clarity, the Court renumbered the counts in the order that Plaintiff listed them within her complaint and will consistently refer to counts as such, regardless of how Plaintiff or Defendants refer to them.

1    Constitution confer such a duty or establish liability because Section A-9 (1) explicitly does so.

2    See ECF No. 3, pg. 12. Section A-9 (1) states:

3            any Board member attempting to or directing any staff to, waive or reduce the rates
             and/or fees imposed in this, or any other section upon any individual or entity
4            without voter approval shall be personally liable for any amount they so attempt to
             waive or reduce in private action brought by any resident of, or property owner
5            within, the District in addition to attorneys fees and other costs incurred by any
             such resident or property owner as a result of bringing such action. Any such
6            reductions or waivers made without voter approval are hereby declared to be
             illegal, void acts, and improperly waived fees may additionally be rebilled by the
7            District, along with any relevant penalties, at any time upon discovery of the
             impropriety.
8
             Id.
9

10           At this stage of litigation, Plaintiff has made a sufficient showing that she has

11   standing and there exists personal liability for the waiver of fees, without voter approval, for

12   Defendants Hanson, Puckett, Tulledo, and Bowles.  Thus, the undersigned will recommend that

13   Defendants' motion to dismiss as to Plaintiff's state Count IV be denied and the claim should

14   proceed.

15           5.      Count V: Nuisance and Negligence in Allowing Dingman to Treat and

16                   Distribute Water

17           Despite Plaintiff listing this claim as one cause of action, Plaintiff makes out two

18   distinct claims arising from the same set of facts – a claim of nuisance and a claim of negligence.

19   Thus, the Court will address each individually as Count V(a): Nuisance and Count V(b):

20   Negligence.

21                   i.      Count V(a): Nuisance

22           Under California law, a nuisance is "[a]nything which is injurious to health . . . or

23   is indecent or offensive to the senses, or an obstruction to the free use of property, so as to

24   interfere with the comfortable enjoyment of life or property . . . ." Cal. Civ. Code § 3479.

25   California requires a disturbance of rights in land before plaintiffs may sustain an action for

26   private nuisance. Martinez v. Welk Grp., Inc., 907 F. Supp. 2d 1123, 1134 (S.D. Cal. 2012); San

27   Diego Gas & Elec. Co. v. Superior Court, 13 Cal. 4th 893, 937 (1996); Mendez v. Rancho

28   Valencia Resort Partners, LLC, 3 Cal. App. 5th 248, 262 (Cal. Ct. App. 2016). There are three

                                                14

1   elements required of a private nuisance action. Mendez, 3 Cal. App. 5th at 262–63. Plaintiffs

2   must show (1) interference with their use and enjoyment of their property, (2) that the invasion of

3   their interest in the use and enjoyment of their property is substantial, and (3) that the interference

4   in their protected interest is not only substantial, but also unreasonable. Id. at 262. To be

5   substantial, the invasion must cause actual damage. Id. And to be unreasonable, the interference

6   must be of a nature, duration, or degree constituting unreasonable interference with the use and

7   enjoyment of the land. Id. at 262–63.

8       Here, Plaintiff alleges that Defendants Hanson, Puckett, Tulledo, Kampa, and

9   Dingman's actions "resulted in excessive Chlorine in the water" that "caused damage and/or

10  destruction to Plaintiff's yard, plants, trees, bushes, garden crops, landscaping, soil biota,

11  livestock, financial well-being, and other property." ECF No. 50, pgs. 29-30. Further, Plaintiff

12  contends that these instances of excessive chlorine occurred "on dozens of occasions." Id. at 9.

13  Thus, Plaintiff alleges that the excess chlorine resulted in actual damage. Defendants make no

14  argument as to whether such damage was unreasonable. Thus, the undersigned will recommend

15  that Defendants' motion to dismiss as to a private nuisance be denied and the claim may proceed.

16      California also recognizes nuisance per se. City of Monterey v. Carrnshimba, 215

17  Cal. App. 4th 1068, 1086 (Cal. Ct. App. 2013). A nuisance per se arises when a legislative body

18  with lawful jurisdiction, in the exercise of police power, expressly and legislatively declares a

19  particular substance, object, activity, or other circumstance to be a nuisance. See id.; City of

20  Claremont v. Kruse, 177 Cal. App. 4th 1153, 1163 (Cal. Ct. App. 2009). California Health and

21  Safety Code §116670 declares any "failure to comply with any primary drinking water standard"

22  a public nuisance. Cal. Health & Safety Code § 116670.

23      Plaintiff contends that Defendants caused, were aware of, and did not remedy

24  chlorine levels in the water which violated the primary drinking water standard. See ECF No. 50,

25  pgs. 29-30. Thus, the undersigned will recommend that Defendants' motion to dismiss as to a

26  nuisance per se be denied and the claim may proceed.

27  / / /

28  / / /

15

As for public nuisance, whereas private nuisance vindicates individual property interests, public nuisance doctrine protects community interests. Citizens for Odor Nuisance Abatement v. City of San Diego, 8 Cal. App. 5th 350, 358 (Cal. Ct. App. 2017) [hereinafter Citizens]. A public nuisance interferes with the rights of the community at large. See Cal. Civ. Code § 3480; People ex rel. Gallo v. Acuna, 14 Cal. 4th 1090, 1103–05 (1997); Citizens, 8 Cal. App. 5th at 358. California defines a public nuisance as "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Cal. Civ. Code § 3480. Early common law categories of public nuisance, codified in 1872, remain applicable. Acuna, 14 Cal. 4th at 1104; Citizens, 8 Cal. App. 5th at 358. Public nuisances at common law are interference with rights common to the public, like health, safety, and convenience. See Acuna, 14 Cal. 4th at 1103–04; Citizens, 8 Cal. App. 5th at 358. Public nuisance requires a showing that the alleged interference is both unreasonable and substantial. San Diego Unified Port Dist. v. Monsanto Co., 445 F. Supp. 3d 1098, 1106 (S.D. Cal. 2020); Acuna, 14 Cal. 4th at 1105.

Here, Plaintiff makes a general claim that Defendants' actions amount to "abandon[ing] their ministerial duty to the public." ECF No. 50, pgs. 29-30. As previously discussed, Plaintiff contends that Defendants provided the public water that had levels of chlorine in violation of state and federal laws. See id. At this stage of litigation, Plaintiff makes a sufficient showing that these excess levels of chlorine interfere with the rights of the community at large. Thus, the undersigned will recommend that Defendants' motion to dismiss as to a public nuisance be denied and the claim may proceed.

*ii.    Count V(b): Negligence*

A negligence action under California law consists of four elements: (1) duty; (2) breach; (3) causation; (4) and damages. See Mayall v. USA Water Polo, Inc., 909 F.3d 1055, 1060 (9th Cir. 2018); A.B. Concrete Coating, Inc. v. Wells Fargo Bank Nat'l Assoc., 491 F. Supp. 3d 727, 738 (E.D. Cal. 2020); Peredia v. HR Mobile Servs., Inc., 25 Cal. App. 5th 680, 687 (Cal. Ct. App. 2018). In other words, plaintiffs in negligence suits must establish a duty to use care, breach of that duty, and the breach's proximate causation of a resulting injury. See

16

1  Vasilenko v. Grace Family Church, 3 Cal. 5th 1077, 1083 (2017).

2          As previously discussed, there is no common law government tort liability and

3  therefore, a statute must establish liability on behalf of a government entity. See Green Valley

4  Landowners Ass'n v. City of Vallejo, 241 Cal. App. 4th 425, 441-42 (2015). Here, Plaintiff

5  asserts that Defendants Hanson, Puckett, Tulledo, Kampa, and Dingman negligently "breached

6  their duty of reasonable care to Plaintiff by failing to abide by numerous laws concerning the

7  operation of the HCSD water production and treatment facilities, their operations, and the

8  HCSD's distribution system which breaches resulted in excessive chlorine in the water which

9  caused damages to Plaintiff, and her property." ECF No. 50, pg. 29. Earlier in the complaint,

10 Plaintiff discusses Defendants' legal duty and liability, citing to HCSD bylaw Section A-9 (26).

11 See id. at 10. That sections states that "all persons who are customers or residents of the District

12 or who own property within the District boundaries, shall have a right to private action,

13 concurrent with the rights of the District in all respects, to enforce any provision of these bylaws .

14 . . against any violator, including any Director, and/or the District itself . . ." ECF No. 3, pg. 16.

15  Thus, the undersigned will recommend that Defendants' motion to dismiss as to Plaintiff's

16 negligence claim be denied and the claim proceed.

17          6.     Count VI: Brown Act Violation; Gift of Public Funds to Kenneth King

18          The Brown Act mandates that most local agency meetings must be open to the

19 public. Cal. Govt Code § 54953; Fowler v. City of Lafayette, 46 Cal. App. 5th 360, 366 (Cal. Ct.

20 App. 2020). The act safeguards the public's right to attend public agencies' meetings and curbs

21 abuse of the democratic process through covert legislation. See Fowler, 46 Cal. App. 5th at 366.

22 Among other things, the act requires public posting of agendas seventy-two hours prior to a

23 meeting and proscribes consideration of items not on that agenda. Cal. Govt Code §

24 54954.2(a)(1), (3); Fowler, 46 Cal. App. 5th at 366.

25          In response to this claim in Plaintiff's original complaint, the Court stated:

26          In this case, Plaintiff has not alleged facts establishing all of the required
           elements of a Brown Act claim. One example suffices: Plaintiff does not allege
27         that she timely demanded that the HCSD cure or correct alleged violations, or that
           the agency did not do so after such demand. Nor does Plaintiff allege specifically
28         what the "unagendized item" was, why it was not appropriate for consideration in

                                              17

closed session, or why it was illegal. The Court and Defendants are left to guess as to what facts form the precise contours of Plaintiff's Brown Act claim.

If facts exist to support the claim, the Court recommend Plaintiff be provided an opportunity to amend. This recommendation, however, is not without limitation and Plaintiff will be expected to make progress in any amended pleading toward stating a cognizable claim which provided fair notice to defendants, as well as the Court. Any amended complaint will need to be specific and precise, as to each named defendants, as to how the Brown Act was violated in the context of the June 12, 2019, HCSD board meeting.

ECF No. 36, pgs. 32-33.

In the amended complaint, Plaintiff recited the claim almost exactly as it was in the original complaint but added two things – first, she clarified which Defendants were at issue (Defendants HCSD, Hanson, Puckett, and Tulledo) and, she added a sentence asserting that she "timely and properly" noticed Defendants of "this violation without response." ECF No. 50, pg. 30. Thus, Plaintiff remedied two of the issues the Court pointed to – which Defendants took the underlying action and that she provided proper notice but the Defendants failed to remedy the issue. However, Plaintiff did not address a fundamental deficiency identified by the Court – what the unagendized item was, why it was not appropriate for consideration in closed session, and why it was illegal. See ECF No. 36, pg. 32. Plaintiff was provided the opportunity to amend her complaint, with notice of the deficiency, but failed to do so. Thus, the undersigned will recommend that Defendants motion to dismiss as to the Brown Act claim be granted, and that this claim be denied without further leave to amend.

### 7. Count VII: Gifts of Public Funds and Fraud as to Dingman

Plaintiff contends that Defendants Hanson, Puckett, Tulledo, Kampa, and Bowles provided "gifts of public funds, in the form of an unlawful employment contract" between Defendant Dingman and HCSD. ECF No. 50, pg. 30. Plaintiff asserts that because Defendant Dingman did not "have a valid water treatment and/or distribution operator's certificate from the State of California" and therefore, it was illegal for him to be paid for "any tasks involving water treatment or distribution operations." Id. at 30-31. Plaintiff categorizes Defendant Dingman's actions as "fraud" that resulted in him "wrongfully collect[ing] money from the HCSD to which he was not entitled." Id. at 31. The Court does not believe the complaint alleges a separate claim

1    of fraud but rather, Plaintiff alleges that such expenditures were an illegal waste of public funds

2    because they were based on fraud. Therefore, the Court will recommend that Defendants motion

3    to dismiss as to this claim be denied.

4                      8.      Count VIII: CPRA Violations

5                 Plaintiff asserts that Defendant Hanson, Puckett, Tulledo, HCSD, and Kampa

6    violated the California Public Records Act (CPRA) by not providing the documents Plaintiff

7    requested. See ECF No. 50, pg. 31. While the complaint itself lacks specifics on what records

8    were requested, and when, Plaintiff attaches Exhibit A to the complaint which shows an email

9    sent by Plaintiff on October 3, 2019, to Defendants Puckett and Hanson requesting:

10               a copy of the Agenda, and all documents received by, and/or reviewed by the
                 Board at that meeting – including all 'lists of bills', the bills themselves, Clint
11               Dingman's time sheets, etc. . . . copies of all communications sent by you to, or
                 received by you from, the State Water Resource Control Board, and/or any other
12               governmental agency for the months of August and September

13               Id. at 36.

14               Thus, the Court will recommend that Defendants' motion to dismiss as to a claim

15   against Defendants Puckett and Hanson for violating the CPRA arising from Plaintiff's October 3,

16   2019, email be denied and such claim proceed. In that same email, Plaintiff asserts that she made

17   previous CPRA requests that were also unanswered. See id. at 36. However, Plaintiff fails to

18   provide any facts about what was requested, whether such documents were subsequently

19   produced (the email indicates documents produced but perhaps due to a technological error

20   Plaintiff could not access them), and who those previous requests were made to. Given Plaintiff

21   was on notice that her amended complaint needed to allege specific actions by each Defendant, in

22   accordance with Rule 8, the Court will recommend any claims arising from CPRA requests

23   outside of the October 3, 2019, email be dismissed without further leave to amend.

24                      9.      Count IX: Gifts of Public Funds to Dingman; Unlawful Use of HCSD

25                              Facility

26               The purpose of §526 is to provide standing for taxpayers to remedy "illegal or

27   wasteful expenditure of public funds or damage to public property." McLeod v. Vista Unified

28   Sch. Dist., 158 Cal. App. 4th 1156, 1165 (2008). According to Plaintiff, Defendants Hanson,

1  Puckett, Tulledo, Kampa, and Dingman allowed Dingman to unlawfully reside at the HCSD

2  water treatment plant from December 1, 2017, through October 7, 2019, resulting in "sanitary and

3  physical hazards" while HCSD paid the utility costs of such use. See ECF No. 50, pgs. 31-32.

4  Thus, the undersigned will recommend that Defendants' motion to dismiss as to Plaintiff's claim

5  that Defendant Dingman residing at the water plant was a wasteful expenditure of public funds

6  and damage to public property be denied and the claim should proceed.

7  ///

8  ///

9  ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1    ///

2    ### III. CONCLUSION

3        Based on the foregoing, the undersigned orders and recommends as follows:

4        1.    It is ORDERED that the findings and recommendations issued on March

5    29, 2024, ECF No. 57, are VACATED.

6        2.    It is RECOMMENDED that Defendants' motion to dismiss, ECF No. 51,

7    be GRANTED IN PART and DENIED IN PART, as described herein.

8        3.    It is RECOMMENDED that Defendants' motion to dismiss, ECF No. 51,

9    be GRANTED as to Federal: Count I and Count IV as to HCSD's failure to provide emailed

10    materials; and State: Count VI and Count VIII as to any CPRA requests made outside of

11    Plaintiff's October 3, 2019, email. It is further recommended that the Federal and State Counts

12    designated here be dismissed without further leave to amend.

13        4.    It is RECOMMENDED that Defendants' motion to dismiss, ECF No. 51,

14    be DENIED as to Federal: Count II(a), Count II(b), Count III, and Count IV as to Plaintiff's

15    requests to access facilities; State: Count I, Count II, Count III, Count IV, Count V(a), Count

16    V(b), Count VII, Count VIII as to Plaintiff's October 3, 2019, CPRA request, and Count IX.

17        5.    Thus, it is RECOMMENDED that this action proceed on the first amended

18    complaint of Plaintiff's remaining claims (Federal: Count II(a), Count II(b), Count III, and Count

19    IV as to Plaintiff's requests to access facilities; State: Count I, Count II, Count III, Count V(a),

20    Count V(b), Count VII, Count VIII as to Plaintiff's October 3, 2019, CPRA request, and Count

21    IX.)

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

These amended findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these amended findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 27, 2025

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

22